[No. 35975-4-I.    Division One.    September 9, 1996.]

ROBERT G. JACQUES, ET AL., *Respondents*, v. LINDA
SHARP, ET AL., *Defendants*, THE CITY OF SEATTLE,
*Petitioner*.

*Theron A. Buck* and *Stafford Frey Cooper*, for petitioner.
*Philip S. Morgan IV*, for respondents.

*Mark G. Honeywell* and *Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim*, for defendant Linda Sharp.

*Nancy T. McKinley* and *Fallon & McKinley*, for defendant Michael Sharp.

Cox, J. — We must decide whether, as a matter of law,

there was probable cause to arrest Robert Jacques for violating a provision of an agreed order for protection that restrains him "from entering the area known as 'Magnolia' in Seattle, Washington." We hold that there was no probable cause to arrest him on this basis and that the trial court did not err in denying the City's motion for summary judgment. Accordingly, we affirm.

In September 1991, Seattle Police Officer Larry Estep was one of several officers who responded to a call to police by Linda Sharp. Sharp reported that her ex-husband, Jacques, was violating the terms of an order for protection that she had obtained during their marriage dissolution. The November 1986 order, which is renewable annually and to which Jacques agreed, precludes him from entering the Magnolia area in Seattle for a period of 10 years from the order's date of entry. After the dissolution, Sharp continued to live in Magnolia with her new husband and her son. During her telephone call to the police, Sharp also told the dispatcher where in Magnolia she had seen Jacques.

Shortly after the call, Officer Estep contacted Jacques at a mini market in Magnolia. During their ensuing discussion, Jacques admitted that he knew the original 1986 order for protection restrained him from entering Magnolia for 10 years. He also stated that he had moved back to Magnolia with his new wife and family since the date of the order. Jacques further stated that it was his understanding that the order for protection was no longer in effect. Officer Estep then arrested Jacques for violation of the order for protection. Jacques was imprisoned in the King County Jail for about 19 hours. He was released after posting bail.

Thereafter, Sharp commenced contempt proceedings in King County Superior Court against Jacques for violation of the order for protection. In December 1991, a court commissioner held Jacques in contempt of the order for having moved to Magnolia.

In September 1993, Jacques commenced this action for false arrest, false imprisonment, and malicious prosecution against the City of Seattle, Sharp, and her husband based on the 1991 arrest. He did not name Officer Estep, the arresting officer, as a defendant in the action. Jacques seeks damages against the City, Sharp, and her husband.

In August 1994, Jacques moved for partial summary judgment, claiming that the City was liable for damages because Officer Estep's actions constituted false arrest and false imprisonment as a matter of law. The City also moved for summary judgment, asserting that Officer Estep had probable cause to arrest Jacques and that the City was statutorily immune from all of Jacques' claims. Judge Laura Inveen denied the cross-motions for summary judgment. The City sought discretionary review of the order, but Jacques did not. This court granted discretionary review to the City.

## Probable Cause

The City contends that the trial court erred by denying it summary judgment because the police officer had probable cause to arrest Jacques. We disagree.

CR 56(c) directs a court to grant summary judgment to a moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." When we review a summary judgment order, we undertake the same inquiry as the trial court.[1] This court considers all facts and reasonable inferences from facts in the light most favor-

---

[1]*Mountain Park Homeowners Ass'n, Inc. v. Tydings*, 125 Wn.2d 337, 341, 883 P.2d 1383 (1994).

able to the nonmoving party.[2] We review questions of law de novo.[3]

■ ■ Jacques sued the City for false arrest, false imprisonment, and malicious prosecution. A false arrest occurs when a person with actual or pretended legal authority to arrest unlawfully restrains or imprisons another person.[4] But no legal authority is necessary for a restraint to constitute false imprisonment.[5] Because the dispute in this discretionary review centers around the legality of Jacques' arrest, we focus our analysis on the arrest.[6]

■ Probable cause is a complete defense to an action for false arrest, false imprisonment, or malicious prosecution.[7] "Probable cause for a warrantless arrest exists where the facts and circumstances within the arresting officer's knowledge . . . are sufficient to permit a person of reasonable caution to believe that an offense . . . is being committed."[8] Not only must the arresting officer have reasonable grounds to believe that the offender is taking the action complained of, but the action itself must be a crime.[9] Otherwise, there can be no probable cause to arrest.

In *Kilcup*, a commissioner of the Port of Seattle arrested Kilcup. It appears he did so because Kilcup had created some kind of disturbance at the insurance counter at the

---

[2]*Mountain Park Homeowners*, 125 Wn.2d at 341.

[3]*Mountain Park Homeowners*, 125 Wn.2d at 341.

[4]*Bender v. City of Seattle*, 99 Wn.2d 582, 590-91, 664 P.2d 492 (1983).

[5]*Bender*, 99 Wn.2d at 591.

[6]*See Bender*, 99 Wn.2d at 591.

[7]*Hanson v. City of Snohomish*, 121 Wn.2d 552, 563, 852 P.2d 295 (1993).

[8]*Gurno v. Town of LaConner*, 65 Wn. App. 218, 223, 828 P.2d 49, *review denied*, 119 Wn.2d 1019 (1992).

[9]*Kilcup v. McManus*, 64 Wn.2d 771, 777, 394 P.2d 375 (1964). *Accord Kellogg v. State*, 94 Wn.2d 851, 854, 621 P.2d 133 (1980).

airport.[10] Kilcup had been fired as an airport security guard and was in the process of gathering his personal belongings and saying good-bye to his co-workers. Our Supreme Court held that the arrest was unlawful because there was no evidence that Kilcup had committed any offense.[11]

Here, the parties do not dispute (1) that Jacques was in Magnolia in violation of the order for protection and (2) that Officer Estep arrested him. Moreover, there is no dispute that Sharp commenced contempt proceedings against Jacques for violation of the order, and a court commissioner held Jacques in contempt for that violation in December 1991. The question before us is whether Jacques' violation of the order for protection constituted a crime for which probable cause existed to justify his warrantless arrest.

The public policy of this state on the subject of domestic violence is strongly expressed in several statutes. Chapter 10.99 RCW, which is titled Domestic Violence—Official Response, identifies domestic violence as a serious crime. It assures victims of such violence the maximum protection from abuse that the law and its enforcers can provide.[12]

Furthermore, RCW 10.31.100(2)(a) directs police officers to make warrantless arrests upon probable cause to believe a person has knowingly violated certain provisions of an order for protection issued under RCW 26.50, the Domestic Violence Prevention Act (DVPA).[13] RCW 26.50.110 makes certain violations of an order for protection a misdemeanor. RCW 26.50.110(1) provides:

---

[10]*Kilcup*, 64 Wn.2d at 773-74.

[11]*Kilcup*, 64 Wn.2d at 777.

[12]RCW 10.99.010 provides, in part,

"The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce it can provide."

[13]RCW 10.31.100(2) provides:

Whenever an order for protection is granted under this chapter and the respondent or person to be restrained knows of the order, a violation of the restraint provisions or of a provision excluding the person from a residence is a misdemeanor.

The police are directed to make warrantless arrests for certain violations of the DVPA. RCW 26.50.110(2) provides:

A peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has violated an order issued under this chapter that restrains the person or excludes the person from a residence, if the person restrained knows of the order.

The DVPA also provides in RCW 26.50.110(3), "A violation of an order for protection shall also constitute contempt of court, and is subject to the penalties prescribed by law."

The above statutory framework makes it clear that domestic violence is a serious crime and that the police are directed to arrest those who violate an order for protection based on certain provisions of the DVPA. Furthermore, RCW 26.50.110(3) makes clear that violation of an order for protection also constitutes contempt of court, subject to the penalties provided by law.

The order for protection that was entered in the Jacques/Sharp dissolution was based on the DVPA. RCW 26.50.060(1), as it read at the time of Jacques' 1991 arrest, provided that a trial court could order the following relief in an order for protection:

(a) *Restrain* a party from committing acts of domestic violence;

---

"A police officer shall arrest and take into custody, pending release on bail, personal recognizance, or court order, a person without a warrant when the officer has probable cause to believe that:

"(a) An order has been issued of which the person has knowledge under . . . chapter 26.50 RCW restraining the person and the person has violated the terms of the order restraining the person from acts or threats of violence or excluding the person from a residence."

(b) *Exclude* the respondent from the dwelling which the parties share or from the residence of the petitioner;

(c) On the same basis as is provided in chapter 26.09 RCW, the court shall make residential provision with regard to minor children of the parties. However, parenting plans as specified in chapter 26.09 RCW shall not be required under this chapter;

(d) Order the respondent to participate in treatment or counseling services;

(e) Order other relief as it deems necessary for the protection of a family or household member, including orders or directives to a peace officer, as allowed under this chapter;

(f) Require the respondent to pay the filing fee and court costs, including service fees, and to reimburse the petitioner for costs incurred in bringing the action, including a reasonable attorney's fee. If the petitioner has been granted leave to proceed in forma pauperis, the court may require the respondent to pay the filing fee and costs, including service fees, to the county or municipality incurring the expense; and

(g) *Restrain* any party from having any contact with the victim of domestic violence or the victim's children or members of the victim's household.[14]

The version of RCW 26.50.110 in effect at the time of Jacques' arrest criminalized violation of certain provisions of orders for protection and provided for warrantless arrests for those violations:

(1) Whenever an order for protection is granted under this chapter and the respondent or person to be restrained knows of the order, *a violation of the restraint provisions or of a provision excluding the person from a residence is a misdemeanor.*

(2) A peace officer shall arrest without a warrant and take into custody a person whom the peace officer has probable cause to believe has *violated an order issued under this*

---

[14](Emphasis added.)

*chapter that restrains the person or excludes the person from a residence,* if the person restrained knows of the order.[15]

■■■■ Jacques argues that RCW 26.50.110(1) criminalizes violation of only three types of provisions in an order for protection. One is a provision that restrains a party from committing acts of domestic violence.[16] Another is a provision that excludes the respondent from the residence of the petitioner.[17] The third is one that restrains a party from contacting a victim of domestic violence or his or her family.[18] Jacques claims that violating provisions of an order for protection that do not expressly fall into any of these categories does not subject a person to arrest. We agree.

RCW 26.50.110(1) is clear with regard to criminalizing the violation of an order "excluding the person from a residence." But it is less clear what the Legislature intended to constitute a violation of the "restraint provisions" of an order under the same statute.

In order to understand the meaning of the phrase "restraint provisions," we must construe the statute. The primary objective of statutory construction is to carry out the Legislature's intent by examining the language of the statute.[19] But where the Legislature's intent is not clear from the language of the statute by itself, it is appropriate to consider legislative history.[20]

The Legislature enacted the DVPA in 1984.[21] Neither the House nor Senate Journals contain legislative history

---

[15](Emphasis added.)

[16]RCW 26.50.060(1)(a).

[17]RCW 26.50.060(1)(b).

[18]RCW 26.50.060(1)(g).

[19]*Stone v. Chelan County Sheriff's Dep't,* 110 Wn.2d 806, 809, 756 P.2d 736 (1988).

[20]*Cherry v. Municipality of Metro. Seattle,* 116 Wn.2d 794, 799, 808 P.2d 746 (1991).

[21]Laws of 1984, ch. 263, §§ 1-17, at 1438-43.

relevant to the question before us. But our courts also look to legislative bill reports and analyses to determine legislative intent.[22] The House and Senate Bill Reports on the DVPA all contain the same language in the section of each report summarizing the bill:

After notice and hearing, the court may *restrain* any party from committing acts of domestic violence, *exclude* the abusing party from the dwelling, award temporary custody and visitation rights, require the abusing party to participate in treatment or counseling, or order any other relief deemed necessary. . . .

After a protection order is granted and the abusing party knows of the order, violation of the *restraint or exclusion provisions* of the order is a misdemeanor.[23]

The bill summary tracks the language of the five types of relief available in orders for protection under the original version of RCW 26.50.060. It also indicates that only two kinds of violations constitute misdemeanors. The necessary implication of this language is that violations of the other types of provisions are not misdemeanors.

The Senate Judiciary Committee Counsel's summary of the DVPA bolsters our conclusion:

[I]f the batterer violates the provisions of the protection order *prohibiting violence or excluding the batterer from a residence* and the police find probable cause to believe that the batterer did violate the order, the police must arrest the batterer. . . .

. . . .

The police must also arrest if the batterer violates the no

---

[22]*State v. Reding*, 119 Wn.2d 685, 690, 835 P.2d 1019 (1992). *See also Lutheran Day Care v. Snohomish County*, 119 Wn.2d 91, 104-05, 829 P.2d 746 (1992) (declining to limit sources of legislative history to the House and Senate Journals), *cert. denied*, 506 U.S. 1079 (1993).

[23]SENATE COMM. ON JUDICIARY, BILL REP., SSB 4541 at 1-2 (Feb. 3, 1984, as passed); SENATE COMM. ON JUDICIARY, BILL REP., SB 4541 at 1-2 (Feb. 2, 1984); SENATE BILL REP., SB 4541 at 1 (Jan. 16, 1984); HOUSE COMM. ON JUDICIARY, BILL REP., SSB 4541 at 1-2 (Feb. 17, 1984) (italics ours).

violence or exclusion from the family residence provisions . . . .[24]

Again, this language makes clear that violations of other provisions of an order for protection do not constitute crimes. Rather, such violations may subject a person to contempt proceedings under RCW 26.50.110(3).

As enacted, the DVPA did not include the no-contact provision in RCW 26.50.060(1)(g), which the Legislature added in an amendment to the DVPA in 1989.[25] But the language of that provision, like RCW 26.50.060(1)(a), includes the word "restrain," which, in our view, brings it within the "restraint provisions," violation of which is a misdemeanor under RCW 26.50.110(1).

We conclude from our reading of this legislative history that the "restraint provisions," violations of which the statute categorizes as misdemeanors, are only those that fall under subsections (a) and (g) of RCW 26.50.060(1).

Our conclusion is further bolstered by a reading of RCW 10.31.100(2), a statute related to the DVPA. That statute governs warrantless arrests and was amended at the same time the Legislature enacted the DVPA in 1984. It provides the clarity that RCW 26.50.110(2) does not:

> A police officer shall arrest and take into custody, pending release on bail, personal recognizance, or court order, a person without a warrant when the officer has probable cause to believe that:
>
> (a) An order has been issued of which the person has knowledge under . . . chapter 26.50 RCW restraining the person and the person has violated the terms of the order *restraining the person from acts or threats of violence or excluding the person from a residence.*[26]

For the purposes of criminal liability, therefore, violating

---

[24]KYLE AIKEN (Counsel, Senate Judiciary Comm.), A SUMMARY OF THE DOMESTIC VIOLENCE PREVENTION ACT at 2, 3 (1984).

[25]LAWS OF 1989, ch. 411, §§ 1(g), 2(d), at 2211.

[26]RCW 10.31.100(2) (emphasis added).

an order for protection that "restrains the person" can only mean violating those provisions of RCW 26.50.060 that explicitly use the word "restrain." Those are limited to subsections (a) and (g) of RCW 26.50.060(1). These two subsections, together with subsection (b) (excluding the respondent from the residence of the petitioner), are the only three provisions that give rise to misdemeanors if knowingly violated.

Because we have concluded that the DVPA criminalizes only three types of violations of an order for protection, the next question is whether the conduct here falls within any of those prohibitions.

■ This order restrains Jacques from entering Magnolia in Seattle. That clearly does not fall within the prohibition against committing acts of domestic violence because it makes no reference to domestic violence, Sharp, or her children. Moreover, the geographic scope of the order is too broad to constitute an exclusion from Sharp's Magnolia residence. Finally, we do not read the order to constitute a restraint from having contact with Sharp or her children. If it were such an order, it would have mentioned Sharp or her children and would have been drawn more narrowly. Thus, the provision of the order that restrains Jacques from entering Magnolia does not fall within any of the three statutory provisions the knowing violation of which constitutes a misdemeanor. Accordingly, Jacques' violation of that provision did not constitute probable cause to arrest him.

The City contends that requiring peace officers to interpret facially valid orders for protection would require them to exercise discretion that the DVPA sought to remove by making warrantless arrests mandatory. This court has emphasized the duty to arrest under the DVPA:

> Generally, where an officer has legal grounds to make an arrest he has considerable discretion to do so. In regard to domestic violence, the rule is the reverse. If the officer has legal

grounds to arrest pursuant to the statute, he has a mandatory duty to make the arrest.[27]

Our decision today does not retreat from what we held in *Donaldson*. We still require that police officers have *legal grounds to arrest pursuant to the statute*.[28] Those grounds include knowing violation of an order for protection restraining a person from committing domestic violence, excluding a person from a residence, or restraining a person from having contact with a domestic violence victim or that victim's children or members of the victim's household. But other "restraints" that courts might impose in an order for protection were not intended by the Legislature to constitute crimes. The remedy for violating such other restraints is the contempt proceeding provided for by the statute, not arrest. We are confident that properly trained police officers will have the ability to understand and apply the rules we have explained in this opinion without regressing to the situation the DVPA was designed to change.

The City was not entitled to summary judgment because there was no probable cause to arrest Jacques on the basis of Jacques' violation of the provision of the order for protection excluding him from Magnolia. We limit our holding to this basis for arrest because that is all that is before us at this stage of the case.

Both parties ask us to rule on the question of liability of the City for the arrest of Jacques. We decline to reach that question for the following reasons.

First, the City argues that it was entitled to summary judgment because there was probable cause to arrest Jacques and the City is entitled to the benefit of RCW

---

[27]*Donaldson v. City of Seattle*, 65 Wn. App. 661, 670, 831 P.2d 1098 (1992), *review dismissed*, 120 Wn.2d 1031 (1993).

[28]*See Donaldson*, 65 Wn. App. at 670.

26.50.140.[29] The City cites cases that suggest that when police officers are immune from liability, their employers are likewise immune.[30] Neither the City nor Jacques discusses *Savage v. State*, a recent Supreme Court case that has an important bearing on the question of the qualified immunity of a police officer's employer.[31] The parties will have the opportunity to address that case and other pertinent authority on remand.

Second, the DVPA provision on qualified immunity is based on RCW 26.50.110(2), which mandates warrantless arrests where the officer has *probable cause* to believe a criminal violation of an order for protection has occurred. The City is not entitled to summary judgment because there was no probable cause to arrest on the basis argued to us. Therefore, we do not reach its argument regarding the related statutory immunity.

Third, Jacques asks us to direct the trial court to grant his motion for partial summary judgment that the City is liable for false arrest. RAP 2.4(a) states that this court will grant a respondent affirmative relief by modifying the decision under review only if the respondent cross-appeals or "if demanded by the necessities of the case." Jacques neither sought cross-review nor does he explain why the necessities of this case require that we grant him relief. His references to the Rules of Appellate Procedure are conclusory and include no argument. We therefore deny Jacques' request that we order the trial court to grant summary judgment to him.

We affirm the trial court's denial of the City's summary judgment motion and remand the case for further proceedings.

---

[29]*See* RCW 26.50.140, which provides, "No peace officer may be held criminally or civilly liable for making an arrest under RCW 26.50.110 if the police officer acts in good faith and without malice."

[30]*See Frost v. City of Walla Walla*, 106 Wn.2d 669, 673-74, 724 P.2d 1017 (1986) (extending police officers' immunity for good faith drug-related seizures to employing municipality). *Accord Guffey v. State*, 103 Wn.2d 144, 153, 690 P.2d 1163 (1984).

[31]*Savage v. State*, 127 Wn.2d 434, 438-47, 899 P.2d 1270 (1995).

GROSSE and BECKER, JJ., concur.