192 P.3d 909 (2008)
145 Wash.App. 106
STATE of Washington, Respondent,
v.
Jeffrey Patrick MADRID, Appellant.
No. 35952-9-II.
Court of Appeals of Washington, Division 2.
June 17, 2008.
*910 Patricia Anne Pethick, Attorney at Law, Tacoma, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
PENOYAR, J.
¶ 1 A jury convicted Jeffrey P. Madrid for nine counts of violating a protection order issued on behalf of his estranged wife Dixie and his stepdaughter AP. Seven of the nine counts stem from letters Madrid wrote to Dixie but sent to Dixie's mother, who delivered them to Dixie several months later. Madrid argues that (1) his convictions on all nine counts should be vacated because the penalty provision statute for protection order violations (former RCW 26.50.110(1) (2000)) was ambiguous, and (2) the delivery of the seven letters supports only one conviction for violation of a protection order since only a single "contact" occurred (i.e. the delivery). We hold that former RCW 26.50.110(1) is unambiguous but that the State failed to plead or prove a required element of the crime. Thus, we reverse and vacate Madrid's convictions, and remand for proceedings consistent with this opinion.

FACTS

I. Substantive Facts
¶ 2 On August 25, 2005, Thurston County Superior Court issued a no contact order preventing Madrid from contacting or coming within 1000 feet of his stepdaughter, AP.[1] On September 9, 2005, the Thurston County Sheriff's Office served Madrid with a permanent order for protection preventing Madrid from contacting or coming within one-quarter mile of his estranged wife, Dixie Paulk Madrid, or AP. The protection order restrained Madrid from "having any contact whatsoever, in person or through others, by phone, mail, or any means, directly or indirectly" with Dixie or AP. State's Ex. 2 at 2.
¶ 3 Beginning in September 2005, Madrid mailed "10 to 20" letters to Amy Bartley, Dixie's mother, a New Mexico resident. Report of Proceedings (RP) (11/14/06) at 32. Madrid addressed the envelopes to Bartley, *911 but he enclosed letters written to Dixie and AP. Bartley told Dixie about the letters and read Dixie "four or five" of the letters over the phone before she stopped opening them altogether. RP (11/14/06) at 39.[2] Bartley threw away some of Madrid's letters, but she delivered a number of them to Dixie on a visit to Washington in April 2006, including a birthday card for AP.
¶ 4 At trial, Dixie and AP testified that Madrid called Dixie's residence on May 15, 2006. When AP answered the phone, Madrid disguised his voice and asked for Dixie. Madrid spoke to Dixie about various matters before she hung up.

II. Procedural Facts
¶ 5 The information charged Madrid with eleven counts of no contact, protection or restraining order/domestic violence violations pursuant to RCW 26.50.110(1); RCW 10.99.020(2)(b);[3] and/or RCW 10.99.050. The State alleged in counts I through VIX that Madrid violated the protection order by contacting Dixie between December 1, 2005 and April 30, 2006. Each of those nine counts corresponded to a letter that Madrid sent to Dixie through Bartley. Count X alleged that Madrid violated the protection order by calling Dixie at her residence on May 15, 2006. Count XI alleged that Madrid violated the no contact order and/or protection order by sending a birthday card to AP.
¶ 6 Prior to trial, Madrid lost a Knapstad[4] motion in which he argued that violations of no contact or protection orders are not gross misdemeanors punishable under RCW 26.50.110(1) unless RCW 10.31.100(2)(a) or (b) requires an arrest for that violation.
¶ 7 A jury convicted Madrid on nine counts (I, III, IV, V, VII, VIII, IX, X, and XI) and acquitted him on two counts (II and VI).[5]
¶ 8 After the trial, the court denied Madrid's motion to arrest judgment pursuant to Criminal Rule (CrR) 7.4. Madrid argued that because Bartley delivered all the letters to Dixie at once, he could only be convicted of a single violation of the protection order, not seven separate violations (counts I, III, IV, V, VII, VIII, IX). Neither Madrid nor the State was able to cite case authority on point.[6]

ANALYSIS

I. Former RCW 26.50.110(1)

A. Standard of Review and Controlling Statutes
¶ 9 We review statutory construction de novo.[7]State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996). Our primary duty in interpreting statutes is to determine and implement the legislature's intent. State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Legislative intent is primarily revealed by the statutory language. State v. Moses, 145 Wash.2d 370, 374, 37 P.3d 1216 (2002). Courts should avoid reading a statute in a way that leads to absurd results since the legislature presumably did not intend such results. J.P., 149 Wash.2d at 450, 69 P.3d 318 (quoting State v. Delgado, 148 Wash.2d 723, 727, 63 P.3d 792 (2003)). When statutory language is unambiguous, we look *912 only to that language to determine the legislative intent, without considering outside sources. Delgado, 148 Wash.2d at 727, 63 P.3d 792.
¶ 10 All nine convictions involve domestic violence protection order violations that the court issued under RCW 26.50.060 to protect Dixie and AP. Such violations are punishable under RCW 26.50.110. Additionally, count XI involves no contact order violations between Madrid and AP, which the court issued under chapter 10.99 RCW. Willful violations of court orders under chapter 10.99 RCW are also punishable under RCW 26.50.110. See RCW 10.99.050(2).
¶ 11 The pertinent part of former RCW 26.50.110(1) stated:
Whenever an order is granted under this chapter . . . [or] chapter 10.99 . . . and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b),[8] is a gross misdemeanor except as provided in subsections (4) and (5) of this section. (Emphasis added).
¶ 12 As discussed below, the legislature added this cross-reference to RCW 10.31.100(2) in 2000 and removed it in 2007. See Laws of 2007, ch. 173, § 2; Laws of 2000, ch. 119, § 24.
¶ 13 Former RCW 10.31.100(2)(a) (2000)[9] stated:
(2) A police officer shall arrest and take into custody, pending release on bail, personal recognizance, or court order, a person without a warrant when the officer has probable cause to believe that: (a) An order has been issued of which the person has knowledge under RCW ... 10.99 ... [or] 26.50 restraining the person and the person has violated the terms of the order restraining the person from acts or threats of violence, or restraining the person from going onto the grounds of or entering a residence, workplace, school, or day care, or prohibiting the person from knowingly coming within, or knowingly remaining within, a specified distance of a location. . . . (Emphasis added).

B. Parties' Contentions
¶ 14 Both parties assert that former RCW 26.50.110 was ambiguous. They disagree, however, on the nature and the proper resolution of the alleged ambiguity.
¶ 15 Madrid asserts that former RCW 26.50.110(1), which cross-referenced RCW 10.31.100(2), was ambiguous as to whether the State had to prove an "an act or threatened act of violence" in order to secure Madrid's conviction for a domestic violence protection order violation. Given the ambiguity, Madrid contends that we should construe the ambiguity against the State and apply the rule of lenityi.e., the State should have been required to affirmatively prove that Madrid committed "acts or threats of violence" against Dixie or AP in order to convict him. See RCW 10.31.100(2)(a). He argues that since the State did not prove this, we should reverse his convictions.
¶ 16 The State disagrees, arguing at length in its brief that the legislature created an unintended statutory ambiguity when it amended several domestic violence statutes in 2000, including adding the cross reference in former RCW 26.50.110(1) to RCW 10.31.100(2). The State asserts that statutory construction and legislative history resolve the ambiguity in its favor.

C. 2007 Amendment to RCW 26.50.110(1) Resolved Ambiguity Against Madrid
¶ 17 The legislature unanimously amended RCW 26.50.110(1) during the 2007 session.[10] *913 See Laws of 2007, ch. 173, § 2. The legislature removed the cross-reference to RCW 10.31.100(2), which Madrid relies upon here. See Laws of 2007, ch. 173, § 2. The legislature also stated in its findings that it meant "to restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic violence act." Laws of 2007, ch. 173, § 1.[11]
¶ 18 We address Madrid's statutory argument on the merits since a criminal prosecution must proceed under the criminal statutes in effect at time the crime was committed unless the legislature expressed a different intent when amending the statute. RCW 10.01.040. The legislature expressed no such intent when it amended RCW 26.50.110(1) in 2007.

II. De novo review of former RCW 26.50.110(1) and RCW 10.31.100(2)

A. Former RCW 26.50.110(1)
¶ 19 We decide whether the legislature's addition of the cross reference to RCW 10.31.100(2) in 2000 made RCW 26.50.110(1) ambiguous such that we should (1) apply the rule of lenity, or (2) look outside the statute's plain meaning for legislative intent.
¶ 20 A careful reading of former RCW 26.50.110(1) shows that it is not ambiguous. According to the amended statute's plain language, the State could not convict an individual of a gross misdemeanor violation of a protection order under chapter 26.50 RCW unless the violation warranted an arrest under RCW 10.31.100(2)(a) or (b). Therefore, we need not apply the rule of lenity, nor look outside the statute's plain meaning for contrary legislative intent.
¶ 21 A plain reading of the relevant language of former RCW 26.50.110(1) and former RCW 10.31.100(1)(a) together, as they existed at the time of the charged offenses, reveals that the legislature wrote:
Whenever an order is granted . . . a violation of the restraint provisions . . . [and]. . . the person has violated the terms of the order . . . restraining the person from acts or threats of violence, . . . or restraining the person from going onto the grounds of or entering a residence, workplace, school, or day care, . . . or prohibiting the person from knowingly coming within, or knowingly remaining within, a specified distance of a location . . . or . . . a foreign protection order, as defined in RCW 26.52.020 . . . for which an arrest is required . . . is a gross misdemeanor.[12]
¶ 22 A plain reading reveals that the only possible ambiguity in former RCW 26.50.110(1) is whether the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" ("arrest provision") applied to each of the four prior antecedents of RCW 26.50.110(1), or only to the immediately preceding one. We need only address whether the arrest provision applied to "restraint provisions" because this is the only prior antecedent that could apply to Madrid's alleged crimes.
¶ 23 Under the "last antecedent rule," qualifying words and phrases refer to the last antecedent unless a contrary intention appears in the statute. See State v. Wentz, 149 Wash.2d 342, 351, 68 P.3d 282 (2003) (quoting In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 781, 903 P.2d 443 (1995)). However, "the presence of a comma before the qualifying phrase is evidence [that] the qualifier is intended to apply to all antecedents instead of only the immediately preceding *914 one." City of Spokane v. Spokane County, 158 Wash.2d 661, 673, 146 P.3d 893 (2006) (quoting Berrocal v. Fernandez, 155 Wash.2d 585, 593, 121 P.3d 82 (2005)).
¶ 24 The plain statutory language and last antecedent rule suggest that the arrest provision applied to the "restraint provisions" antecedent. First, the presence of the comma before the arrest provision, which is the relevant qualifying phrase, suggests that the provision applied to all previous antecedents, including "restraint provisions." Second, the plain language of RCW 10.31.100(2)(a) and (b), the two subsections of the arrest provision that are referenced in RCW 26.50.110(1), clearly indicates that these subsections were meant to apply to all the previous antecedents, not just the last prior antecedent. Subsection (2)(b) of the arrest provision only applies to foreign protection orders, the subject of the last prior antecedent, whereas subsection (2)(a) has a broader application. This suggests that the arrest provision must have applied to all prior antecedents, including "restraint provisions," in order to prevent subsection (2)(a) from being rendered meaningless.
¶ 25 Therefore, we hold that RCW 26.50.110 is unambiguous. Accordingly, we do not look at other sources to determine legislative intent, such as the legislative history. See, e.g., Delgado, 148 Wash.2d at 727, 63 P.3d 792. A statute's plain meaning is discerned from "all that the Legislature has said in the statute and related statutes which disclose legislative intent about the provision in question," State Dept. of Ecology v. Campbell & Gwinn, 146 Wash.2d 1, 11-12, 43 P.3d 4 (2002), so other related statutory provisions and the statutory scheme are not "outside sources" when determining whether a statute is ambiguous.

B. Former RCW 10.31.100(2)(a)
¶ 26 At oral argument, counsel indicated that RCW 10.31.100(2)(a) was itself ambiguous as it could be read that any violation of an order that included a provision restraining the person from acts of violence required arrest or that arrest was required only if there was a violation of the restraint against violence itself. Reviewing de novo, we are not persuaded that RCW 10.31.100(2)(a) is ambiguous, given that the legislature specifically used the words "the order" not "an order," which plainly leads to the interpretation that arrest is required only where a person has violated the specific portion of the order that restrains violence.[13]

C. Result Not Absurd
¶ 27 The next issue is whether this plain meaning analysis leads to absurd results. We avoid a "reading that results in absurd results" because "it will not be presumed that the legislature intended absurd results." J.P., 149 Wash.2d at 450, 69 P.3d 318 (quoting Delgado, 148 Wash.2d at 733, 63 P.3d 792).
¶ 28 The result here may be anomalous, but it is not absurd and therefore we decline to read the arrest provision out of RCW 26.50.110(1). The anomaly results from the fact that, under a plain reading of the statutes, Madrid's violation of the order's no contact "restraint provisions" did not warrant arrest under former RCW 10.31.100(2)(a) and thus did not constitute a gross misdemeanor. It could be argued that the result here is anomalous because it finds that the legislature criminalized some but not all violations of a restraining order. For instance, a conversation with the protected person in a chance encounter on the street is criminalized, but a phone call is not. However, this is the result of the language that the legislature used and it is not for us to find a different effect of these statutes than that which the legislature expressed. In any case, Madrid may still be held in contempt of court for these violations. See RCW 26.50.110(3).
¶ 29 In contrast, if Madrid had knowingly come within one-quarter mile of Dixie's house or AP's school, he would have committed a gross misdemeanor because he would *915 have violated the explicit terms of the protection order and the "specified distance" provision of RCW 26.50.110(1). Although it may be anomalous that Madrid would receive a lesser sanction for contacting the protected party than for violating the "specified distance" provision, the disparity does not rise to the level of such absurdity that we should ignore the statute's plain meaning.
¶ 30 In sum, the plain language of former RCW 26.50.110(1) required the State to show that violation of a domestic violence protection order warranted an arrest under RCW 10.31.100(2) in order to convict Madrid of a gross misdemeanor violation of a protection order. The State did not plead or prove this element of the crime. Therefore, we reverse, vacate Madrid's convictions, and remand for proceedings consistent with this opinion.[14]
We concur: HOUGHTON, C.J., and HUNT, J.
NOTES
[1] On January 17, 2006, the same court issued another no contact order to prevent Madrid from contacting or coming within one mile of AP. State's Ex. 3.
[2] As the State conceded at the Knapstad hearing, the record does not indicate which letters Bartley read to Dixie over the phone. See State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
[3] This RCW subsection does not exist.
[4] Knapstad, 107 Wash.2d 346, 729 P.2d 48.
[5] Exhibits 6 and 10, which are letters that served as the basis for counts II and VI, respectively, are not part of the record on appeal.
[6] At the motion hearing, both parties discussed State v. Ward, 148 Wash.2d 803, 64 P.3d 640 (2003). The Ward court held that sufficient evidence existed for a rational juror to infer that a restrained party violated a no contact order when he called the protected party's home and spoke with his wife, even though the record did not disclose whether his wife told the protected party of the phone call. Ward, 148 Wash.2d at 816, 64 P.3d 640. The trial court noted that here, unlike in Ward, the State presented evidence to show that the protected party was contacted.
[7] Although Madrid made a statutory argument similar to this one at his Knapstad hearing, a denial of a Knapstad motion is not reviewable on appeal after a trial takes place. State v. Olson, 73 Wash.App. 348, 357 n. 6, 869 P.2d 110 (1994) (noting that the Knapstad motion merges into the trial). Therefore, we engage in de novo statutory review.
[8] RCW 10.31.100(2)(b) pertains to foreign protection orders and therefore does not apply here.
[9] A 2006 amendment to RCW 10.31.100(2)(a) does not impact the present analysis. See Laws of 2006, ch. 138, § 23.
[10] Neither party cited or discussed the 2007 amendment in its brief.
[11] Current RCW 26.50.110(1)(a) reads as follows:

Whenever an order is granted under this chapter. . . and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor:
(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;
Laws of 2007, ch. 173, § 2 (emphasis added).
[12] Except for the word "and" these words are direct quotes from former RCW 26.50.110(1) and RCW 10.31.100(1)(a). Words from the statutes that don't affect the analysis have been omitted and the order of the language has been changed for clarity.
[13] The pertinent part of RCW 10.31.100(2)(a) reads: "An order has been issued of which the person has knowledge under RCW 26.44.063, or chapter 7.90, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 RCW restraining the person and the person has violated the terms of the order restraining the person from acts or threats of violence. . ." (emphasis added).
[14] We need not address the unit of prosecution issue on appeal, because we reverse and vacate Madrid's convictions on other grounds.