[No. 36444-1-II.   Division Two.   February 18, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. DONALD ANAINISE WOFFORD, *Appellant*.

872

*Dana M. Lind* (of *Nielsen, Broman & Koch PLLC*), for appellant.

*Gerald A. Horne, Prosecuting Attorney*, and *Kathleen Proctor, Deputy*, for respondent.

¶1 ARMSTRONG, J. — Donald Anainise Wofford appeals his conviction of violating a domestic violence no-contact order. He challenges the sufficiency of the evidence, arguing that the State failed to prove that his conduct was a crime under former RCW 26.50.110(1) (2006) and that he had previous convictions that elevated the crime to a felony under RCW 26.50.110(5).[1] Finding no reversible error, we affirm.

---

[1] The substantive language of RCW 26.50.110(5) did not change in the 2006 amendment.

## FACTS

¶2 On July 8, 2005, a Pierce County commissioner executed a no-contact order under chapters 10.99 and 26.50 RCW prohibiting Wofford from having any contact "directly or indirectly, in person, in writing, by telephone, or electronically, either personally or through any other person, with: Tara Mozer" for five years. Ex. 8, at 1. The order warned that its violation "is a criminal offense under chapter 10.99 RCW and 26.50 RCW and will subject a violator to arrest. . . ." Ex. 8, at 1.

¶3 On December 1, 2006, Deputy Sheriff Jeff Reigle, accompanied by Community Corrections Specialist Torrey McDonough, stopped Wofford for speeding. The officers saw Tara Mozer in the car. Wofford attempted to flee on foot, but Reigle stopped him and then learned of the no-contact order between Wofford and Mozer.

¶4 The State charged Wofford with one count of violation of a domestic violence no-contact order. The State charged the violation as a felony under RCW 26.50.110(5) because Wofford had two prior convictions for violating no-contact orders.

¶5 To prove those prior convictions, the State presented evidence that a "Donald Anainise Wofford" had twice been convicted of wrongfully contacting "Tara Mozer." The charging documents underlying the prior convictions described "Donald Anainise Wofford" as

Race: Black . . . Height: 6'00" . . . Eyes: Brown Hair: Black DOB: 10/3/72.

Exs. 3, 6. His weight was listed as 180 pounds in one complaint and 170 pounds in the other.

¶6 The current no-contact order described "Donald Anainise Wofford" as

Sex Male; Race Black; Eyes Brown; Weight 165; Height 6'00; DOB 10/03/72.

Ex. 8.

¶7 Officers Reigle and McDonough identified Wofford in court as the man they arrested on December 1, 2006, for violating that order. In addition, Reigle confirmed that Wofford stated after arrest that "at some previous point he had been convicted of a similar crime." 3 Report of Proceedings at 197.

¶8 Wofford moved to dismiss, arguing that the State failed to prove that he was the same individual who committed the two prior violations. The trial court denied Wofford's motion, stating that the jury could infer from the evidence that Wofford was the same person named and described in the prior convictions. The jury convicted Wofford of violating a no-contact order and found by special verdict that he had violated two prior no-contact orders.

## ANALYSIS

¶9 Wofford argues that the evidence against him was insufficient to prove that he violated former RCW 26-.50.110(1) because his no-contact order violation was not "of the kind for which an arrest is required." Br. of Appellant at 8. Alternatively, he argues that the evidence against him was insufficient to elevate the violation to a felony.

SUFFICIENCY OF THE EVIDENCE UNDER FORMER RCW 26.50.110(1)

A. Statutory Background

¶10 The State charged Wofford with violating a no-contact order under former RCW 26.50.110(1), which provided:

Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, *a violation of the restraint provisions*, or of a provision excluding the person from a residence, workplace, school, or day care, or

of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, *for which an arrest is required under RCW 10.31.100(2) (a) or (b)*, is a gross misdemeanor except as provided in subsections (4) and (5) of this section.

(Emphasis added.)

¶11 Under RCW 10.31.100(2)(a), an officer must arrest a suspect when the officer has probable cause to believe that

[(1)] [a]n order has been issued of which the person has knowledge under RCW 26.44.063, or chapter 7.90, 10.99, 26.09, 26.10, 26.26, 26.50, or 74.34 RCW restraining the person and [(2)] the person has violated the terms of the order restraining the person from acts or threats of violence, or restraining the person from going onto the grounds of or entering a residence, workplace, school, or day care, or prohibiting the person from knowingly coming within, or knowingly remaining within, a specified distance of a location or, in the case of an order issued under RCW 26.44.063, imposing any other restrictions or conditions upon the person.

RCW 10.31.100(2)(b) requires arrest under similar circumstances for foreign protection orders. *State v. Bunker*, 144 Wn. App. 407, 414, 183 P.3d 1086 (2008). Violating a no-contact order is also punishable as contempt of court under RCW 26.50.110(3).[2]

■ ¶12 In 2007, the legislature amended RCW 26.50.110 to clarify that it intended most no-contact order violations to be criminal offenses. Subsection (1)(a) now provides as follows:

Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a

---

[2] The substantive language of RCW 26.50.110(3) did not change in the 2006 amendment.

gross misdemeanor, except as provided in subsections (4) and (5) of this section:

(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;

(ii) A provision excluding the person from a residence, workplace, school, or day care;

(iii) A provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location; or

(iv) A provision of a foreign protection order specifically indicating that a violation will be a crime.

RCW 26.50.110(1)(a); *see* SUBSTITUTE H.B. 1642, 60th Leg., Reg. Sess. (Wash. 2007) (SHB 1642). The legislature specifically stated in the session law text that the amendment was not intended to change the substantive law or broaden the scope of law enforcement and that it was amending the statute to make clear its intent that a willful violation of a no-contact order is a criminal offense. LAWS OF 2007, ch. 173, § 1.

¶13 Nonetheless, Wofford contends that only a violation of a no-contact order for which the police must arrest the violator constitutes criminal conduct. This raises an issue of statutory interpretation, which we review de novo. *State v. Alvarado*, 164 Wn.2d 556, 561, 192 P.3d 345 (2008) (citing *Tingey v. Haisch*, 159 Wn.2d 652, 657, 152 P.3d 1020 (2007)).

B. Former RCW 26.50.110(1)

¶14 Our goal in construing a statute is to carry out the legislature's intent. *Am. Cont'l Ins. Co. v. Steen*, 151 Wn.2d 512, 518, 91 P.3d 864 (2004) (citing *State v. Watson*, 146 Wn.2d 947, 954, 51 P.3d 66 (2002)). If a statute is ambiguous, we look to principles of statutory construction and legislative history to discern the legislature's intent. *State ex rel. Citizens Against Tolls v. Murphy*, 151 Wn.2d 226, 242-43, 88 P.3d 375 (2004). If a statute is unambigu-

ous, we apply it according to its plain language. *State v. Hogan*, 145 Wn. App. 210, 216, 192 P.3d 915 (2008) (citing *Watson*, 146 Wn.2d at 954). A statute is ambiguous if its language is susceptible to more than one reasonable interpretation. *Bunker*, 144 Wn. App. at 415 (quoting *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)).

¶15 We find former RCW 26.50.110(1) susceptible to more than one reasonable interpretation and, therefore, ambiguous. We recognize that different panels of our court have held that former RCW 26.50.110(1) is unambiguous. *See State v. Madrid*, 145 Wn. App. 106, 108, 192 P.3d 909 (2008);[3] *Hogan*, 145 Wn. App. at 212.[4] But we agree with Division One that former RCW 26.50.110(1) is unclear as to whether the final clause " 'for which an arrest is required under RCW 10.31.100(2)(a) or (b)' " is intended to modify all the preceding phrases or only the immediately preceding phrase dealing with foreign orders. *Bunker*, 144 Wn. App. at 415 (quoting former RCW 26.50.110(1)). Former RCW 26.50.110(1) was not a "virtuosic specimen of legislative drafting," and there is clearly a reasonable dispute as to what the legislature intended. *Bunker*, 144 Wn. App. at 413; *contra Madrid*, 145 Wn. App. 106; *Hogan*, 145 Wn. App. 210.

---

[3] In *Madrid*, the defendant was convicted of violating a no-contact domestic violence order that prohibited contact by " 'phone, mail, or any means . . .' " and required the defendant to stay a specified distance from the protected party. *Madrid*, 145 Wn. App. at 109. The defendant appealed, arguing that incorporating RCW 10.31.100(2) into former RCW 26.50.110(1) added an element to the crime. *See Madrid*, 145 Wn. App. at 112. This court found that former RCW 26.50.110(1) is unambiguous and refused to review sources of legislative intent, such as legislative history. *Madrid*, 145 Wn. App. at 115-16. This court reversed the conviction because the State did not present evidence that the defendant's no-contact order violation was one for which arrest was required under RCW 10.31.100(2). *Madrid*, 145 Wn. App. at 117.

[4] In *Hogan*, the defendant was charged with violating former RCW 26.50.110(1) for having contact with the protected party when she visited him while he was in custody. *Hogan*, 145 Wn. App. at 213. As in *Madrid*, this court found that "[f]ormer RCW 26.50.110(1) is not ambiguous as written" and that the defendant's conduct (simply being in the presence of the protected party) was not a crime based in part on the plain language of former RCW 26.50.110(1). *Hogan*, 145 Wn. App. at 218-19.

¶16 Because we find that former RCW 26.50.110(1) is ambiguous, we turn to legislative history and principles of statutory construction to determine whether Wofford's violation must have been one for which an arrest is required to constitute a crime.

## C. Legislative History

¶17 The legislature's intent as to the elements of the crime of violating a no-contact order is plainly evidenced in the 2000 and 2007 amendments to RCW 26.50.110(1). "To help clarify the original legislative intent of a statute, we may turn to its subsequent history." *Woods v. Bailet*, 116 Wn. App. 658, 665, 67 P.3d 511 (2003) (citing *Littlejohn Constr. Co. v. Dep't of Labor & Indus.*, 74 Wn. App. 420, 427, 873 P.2d 583 (1994)). For example, the Washington Supreme Court looked to an amended statute for guidance in interpreting its former version in *Rozner v. City of Bellevue*, 116 Wn.2d 342, 349, 804 P.2d 24 (1991) (quoting *Rozner v. City of Bellevue*, 56 Wn. App. 525, 538-40, 784 P.2d 537 (1990) (Coleman, C.J., dissenting)). In interpreting the legislature's intent, the court looked to a 1988 proposed amendment, the governor's veto message concerning the proposed amendment, and the " '[l]egislature's subsequent action' ": the text of the 1989 revised bill. *Rozner*, 116 Wn.2d at 347-50 (quoting *Rozner*, 56 Wn. App. at 538-40 (Coleman, C.J., dissenting)). The court found that "[t]he amended statute reflects the Legislature's intent" and that the "changes inserted in the present statute" and a "careful review of the legislative history" make the inferences from the subsequent statute a verity in interpreting the legislative intent of the former statute. *Rozner*, 116 Wn.2d at 349 (quoting *Rozner*, 56 Wn. App. 525 (Coleman, C.J., dissenting)). Here, the 2000 and 2007 amendments show that the legislature always intended criminal penalties for no-contact order violations.[5]

---

[5] The *Bunker* court looked to the 2007 amendment and found that the statute applied retroactively. *Bunker*, 144 Wn. App. at 420. " 'When a statute or regulation is adopted to clarify an internal inconsistency to help it conform to its original

■ ¶18 In 2000, the legislature added the RCW 10-.31.100(2) cross-reference to RCW 26.50.110(1). Laws of 2000, ch. 119, § 24. Although the legislative history is silent as to why that provision was added, it does specifically confirm that "[a] violation of a no-contact order, foreign protection order or restraining order that does not constitute a class C felony is a gross misdemeanor." 2000 Final Legislative Report, 56th Wash. Leg., at 131. The house of representatives further summarized the bill, stating that "[a] police officer shall arrest any person who violates the restraint or exclusion provision of a court order relating to domestic violence." H.B. Rep. on Engrossed Second Substitute S.B. 6400, at 4, 56th Leg., Reg. Sess. (Wash. 2000) (E2 SSHBR 6400). The policy behind the 2000 amendment was to strengthen domestic violence laws, not weaken them. See E2 SSHBR 6400. The legislature plainly intended that a person commits a crime if he or she violates any no-contact order, and the violation need not involve an act or threat of violence or presence within a specified distance of a location to be criminal.

■ ¶19 The legislature amended RCW 26.50.110 again in 2007, removing the cross-reference and adding the following finding of intent: "[t]he legislature finds this act necessary to *restore* and *make clear its intent* that a willful violation of a no-contact provision of a court order is a criminal offense. . . ." Laws of 2007, ch. 173, §§ 1, 2 (emphasis added). The 2007 amendments did not result in a substantive change in the law. See HB. Rep on SHB 1642, at 3, 60th Leg., Reg. Sess. (Wash. 2007) (testimony in support of amendment: "It is a technical fix to restore the intended protections of the law. . . . There needs to be clarity in this area."). As the legislative report noted, some trial courts were holding that short of acts or threats of violence,

intent, it may properly be retroactive as curative.' " *Bunker*, 144 Wn. App. at 416 (quoting *State v. MacKenzie*, 114 Wn. App. 687, 699, 60 P.3d 607 (2002)). We find that the reason the legislature did not expressly address retroactivity in the 2007 amendment is because there was no substantive change in the law; the amendment merely clarified legislative intent. Under *Rozner*, we need not conduct a retroactivity analysis of the 2007 amendment in order to look to the subsequent legislative history of RCW 26.50.110 when interpreting former RCW 26.50.110.

a violation of the restraint provision in an order was punishable as contempt of court rather than a misdemeanor or felony. 2007 FINAL LEGISLATIVE REPORT, 60th Wash. Leg., at 137. SHB 1642 amended the provision describing when it is a gross misdemeanor to violate a no-contact, protection, or restraining order, and clarified that a gross misdemeanor results when the restrained person knows of the order and violates a provision prohibiting acts or threats of violence against, or stalking of, a protected party, or a restraint provision prohibiting contact with a protected party. 2007 FINAL LEGISLATIVE REPORT, 60th Wash. Leg., at 138. Thus, the 2007 amendment makes clear that Wofford's interpretation of former RCW 26.50.110(1) is, and has always been, erroneous.

D. Statutory Construction

¶20 Along with legislative history, principles of statutory construction show that conduct for which an arrest is required is not necessary to sustain a conviction under former RCW 26.50.110(1).

¶21 The State relies on *State v. Chapman*, 140 Wn.2d 436, 998 P.2d 282 (2000), *State v. Dejarlais*, 136 Wn.2d 939, 969 P.2d 90 (1998), and *Jacques v. Sharp*, 83 Wn. App. 532, 922 P.2d 145 (1996). But each of these cases interpreted a prior version of the statute that did not contain the "for which an arrest is required" cross-reference at issue here. *See* LAWS OF 2000, ch. 119, § 24. Thus, they provide us no guidance. *See Hogan*, 145 Wn. App. at 215 (holding that *Chapman* is "no longer binding precedent" based on subsequent statutory amendments); *Bunker*, 144 Wn. App. at 417 n.3 (recognizing that the interpretation in *Jacques* does not apply to the 2000 version of RCW 26.50.110 because of the differing language).

i. Last Antecedent Rule

¶22 The last antecedent statutory construction rule provides that unless a contrary intent appears in the statute, a qualifying phrase refers to the last antecedent, and a

comma before the qualifying phrase is evidence that the phrase applies to all antecedents. *In re Sehome Park Care Ctr., Inc.*, 127 Wn.2d 774, 781, 903 P.2d 443 (1995). We do not apply the last antecedent rule inflexibly or take it as always binding. *In re Pers. Restraint of Smith*, 139 Wn.2d 199, 205, 986 P.2d 131 (1999) (quoting *State v. McGee*, 122 Wn.2d 783, 788-89, 864 P.2d 912 (1993)). Although both *Madrid* and *Hogan* found that former RCW 26.50.110(1) is unambiguous, each relied on the last antecedent rule to conclude that the final clause referring to RCW 10.31.100 modified every preceding clause. *Madrid*, 145 Wn. App. at 115; *Hogan*, 145 Wn. App. at 217-18. *Madrid* determined that the comma before the qualifying phrase (the arrest provision) suggests that the qualifying phrase applies to all previous antecedents (including the restraint provision). *Madrid*, 145 Wn. App. at 115; *see* former RCW 26.50.110(1). But we are unwilling to mechanically apply the last antecedent rule if, considering other principles for determining legislative intent, the result is plainly at odds with such legislative intent. *See Smith*, 139 Wn.2d at 205 (quoting *McGee*, 122 Wn.2d at 788-89). Applying the last antecedent rule here would require us to interpret the "for which an arrest is required" provision to modify all the preceding provisions, not just the foreign order provision. And this throws the resulting crime classification out of joint with both the statutory scheme as a whole and the legislature's stated intent.

ii. Wofford's Interpretation Renders Other Provisions Meaningless

¶23  We interpret statutes to avoid rendering other statutory provisions meaningless and superfluous. *See Bunker*, 144 Wn. App. at 419 (quoting *State v. Lilyblad*, 163 Wn.2d 1, 11, 177 P.3d 686 (2008)). If we held that conduct for which an arrest is required under RCW 10.31.100(2) was necessary to convict Wofford under former RCW 26.50.110(1), other statutory provisions would be rendered superfluous. *See Bunker*, 144 Wn. App. at 418-19.

¶24 First, RCW 10.99.040 requires that *all* no-contact orders state that a violation of the order is a crime. The *Bunker* court properly questioned, "[W]hy, if the legislature had not intended to impose criminal penalties for violations of domestic violence no-contact orders, it has required that each and every no-contact order issued by a court proclaim that '[v]iolation of this order is a criminal offense'" under RCW 10.99.040? *Bunker*, 144 Wn. App. at 419 (second alteration in original) (quoting RCW 10.99.040(4)(b)). RCW 10.99.040 would be meaningless and superfluous if only certain no-contact order violations were criminal.

¶25 Second, RCW 26.50.110(3) provides that "violation of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW . . . shall *also* constitute contempt of court." (Emphasis added.) Thus, contempt is an additional remedy available to the victim of a no-contact order violation under the plain language of RCW 26-.50.110(3). Wofford's interpretation would leave the victim with contempt as the primary remedy for domestic violence no-contact order violations; thus, his interpretation would render the "also" in RCW 26.50.110(3) meaningless. *See Bunker*, 144 Wn. App. at 419.

iii. We Must Avoid Absurd Results

¶26 Wofford's interpretation would also lead to illogical results. Wofford maintains that a no-contact order violation is criminal only when RCW 10.31.100 requires arrest because of an act or threat of violence or an intrusion into a prohibited location. Under RCW 10.31.100(2)(a), an arrest is required if the restrained person commits acts or threats of violence or enters a residence or other place from which he or she is restrained. But an arrest is not required if the restrained person physically contacts a protected person who is outside the protected area. Thus, if Wofford's interpretation is correct, a restrained person who enters a prohibited place but has no contact with the victim commits a crime, but a person who has nonviolent contact with a protected person outside the protected place does not. The

legislature could not have intended such an anomalous result.

### iv. Rule of Lenity

¶27 Wofford urges us to apply the rule of lenity to reach his interpretation of former RCW 26.50.110(1). But the rule of lenity does not apply when statutes "can be reconciled in a way that reflects the legislature's clear intent." *Bunker*, 144 Wn. App. at 420 (quoting *State v. R.J.*, 121 Wn. App. 215, 217 n.2, 88 P.3d 411 (2004)). Here, former RCW 26.50.110(1) was awkwardly drafted and the legislature has said that it has always intended to criminalize violation of domestic violence no-contact orders. *Bunker*, 144 Wn. App. at 420. To apply the rule of lenity would frustrate the legislature's intent. We decline to do so.

¶28 We conclude that the evidence was sufficient to support Wofford's conviction because the State proved each element of a no-contact order violation under former RCW 26.50.110(1).

¶29 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

¶30 HOUGHTON, J. (concurring) — I concur but write separately to explain my departure from my agreement with *State v. Madrid*, 145 Wn. App. 106, 192 P.3d 909 (2008). As the majority notes, "[D]ifferent panels of our court have held that former RCW 26.50.110(1) [(2006)] is unambiguous." Majority, at 878. I served on one of those panels, concurring in *Madrid*. Now faced again with the question whether former RCW 26.50.110(1) is ambiguous, I choose to reconsider my concurrence in *Madrid*. For the reasons set forth by the majority, I find that no reversible error occurred here and I affirm.

¶31 BRIDGEWATER, J. (dissenting) — I concur in the majority's opinion regarding sufficiency of the evidence. But I

respectfully dissent and would reverse and remand for a dismissal based on our opinions in *State v. Madrid*, 145 Wn. App. 106, 192 P.3d 909 (2008), and *State v. Hogan*, 145 Wn. App. 210, 192 P.3d 915 (2008).

¶32 The State charged Wofford with violating a no-contact order under former RCW 26.50.110 (2006). In *Madrid* and *Hogan*, we held that the State could not convict an individual under chapter 26.50 RCW unless the violation warranted an arrest under former RCW 10.31.100(2) (2000).[6] *Madrid*, 145 Wn. App. at 114, 115; *Hogan*, 145 Wn. App. at 218. We review convictions under the statute in effect at the time the crime was committed absent express legislative intent to the contrary in an amendment or repealing act. *Hogan*, 145 Wn. App. at 215-16; RCW 10.01.040.

¶33 In both *Madrid* and *Hogan*, we reversed the conviction because the State did not present evidence that the defendant's no-contact order violation was one for which arrest was required under former RCW 10.31.100(2). *Madrid*, 145 Wn. App. at 114; *Hogan*, 145 Wn. App. at 219. Additionally, in *Madrid*, we applied the last antecedent rule of statutory construction to former RCW 26.50.110(1) and determined (1) that the comma before the qualifying phrase "for which an arrest is required" suggests that the qualifying phrase applies to all previous antecedents (including the restraint provision) and (2) that the plain language of former RCW 10.31.100(2)(a) and (b) indicate that the sections were meant to apply to all antecedents. *Madrid*, 145 Wn. App. at 114, 115; *see* former RCW 26.50.110. We pointed out that although subsection (2)(b) applies only to foreign protection orders (the last prior antecedent before the qualifying phrase), subsection (2)(a) applies to a broad variety of orders, which include orders issued under chapters 10.99 or 26.50 RCW. *See Madrid*, 145 Wn. App. at 115; former RCW 10.31.100(2)(a), (b). Thus, we determined that

---

[6] A 2006 amendment to RCW 10.31.100 does not impact the present analysis. *See* LAWS OF 2006, ch. 138, § 23.

the cross-reference to subsection (2)(a) would be meaningless if the qualifying phrase applied only to the foreign protection order phrase. *Madrid*, 145 Wn. App. at 115. This court came to a similar result in *Hogan*. *Hogan*, 145 Wn. App. at 219.

¶34 I would apply the same analysis in this case, although the defendants in *Hogan* and *Madrid* were charged with violating former RCW 26.50.110(1), rather than the elevated felony under former RCW 26.50.110(5), because Wofford's charge merely "increas[ed]" from a gross misdemeanor under subsection (1) to a felony under subsection (5) based on his prior convictions. *See* Clerk's Papers at 1; *State v. Bunker*, 144 Wn. App. 407, 413, 411, 183 P.3d 1086 (reviewing former RCW 26.50.110(1) to determine whether a crime was committed when defendants were charged under the elevated felony provision), *review granted*, 165 Wn.2d 1003 (2008).

¶35 Accordingly, I would hold, as we did in *Hogan* and *Madrid*, that former RCW 26.50.110(1) is unambiguous and requires that the violation be of a kind "for which an arrest is required" under former RCW 10.31.100(2) as an element of the offense. Under *Hogan*, the elements required to criminally convict a no-contact order violation under former RCW 26.50.110(1) include "(1) the existence of an order under this chapter or others, including chapter 10.99 RCW; (2) the restrained party knows of the order; (3) the restrained party violates the order; and (4) arrest is required under [former] RCW 10.31.100(2)(a) or (b)." *Hogan*, 145 Wn. App. at 220; former RCW 26.50.110(1). Because the evidence here does not support a finding that Wofford's violation falls into any of the categories of violations for which an arrest is required, the conviction should be dismissed.