207 P.3d 483 (2009)
STATE of Washington, Respondent,
v.
Leif ALLEN, Appellant.
No. 36868-4-II.
Court of Appeals of Washington, Division 2.
May 27, 2009.
*485 Thomas Edward Doyle, Attorney at Law, Hansville, WA, for Appellant.
Carol L. La Verne, Thurston County Prosecutor's Office, Olympia, WA, for Respondent.
ARMSTRONG, J.
¶ 1 Leif Allen appeals his two convictions of violating a no-contact order, arguing that reversal is required because his offenses did not include acts or threats of violence and because his two convictions violated his double jeopardy rights. He also argues that the trial court miscalculated his offender score and sentenced him beyond the statutory maximum. We affirm Allen's convictions but remand for resentencing.

Facts
¶ 2 On March 4, 2007, Aletta Foley checked her e-mail for the first time in about three weeks and found two messages from Allen. One was sent on February 12 and was the return of an e-mail she had sent him while they were dating, and the other was sent on February 14 and was an invitation to join a social networking website. At the time, there was a court order in place prohibiting Allen from having direct or indirect contact with Foley.
¶ 3 After Foley reported these contacts to the police, the State charged Allen by amended information with two counts of violating a no-contact order (domestic violence). These were felony charges due to Allen's prior no-contact order violations. Before trial, Allen stipulated that he had two prior convictions for violating a no-contact order.
¶ 4 Allen admitted at trial that he had sent the February 12 e-mail but explained that he had inadvertently clicked the reply or forward button instead of deleting Foley's prior e-mail to him. With reference to the February 14 e-mail, Allen said that he had nothing to do with the invitation that Foley received.
I'd gone throughthere's a portion that you can go through your contact list at the Yahoo account and send an invitation to each member on there, not realizing that I still had Ms. Foley's contact information in there. Several other people also received the same message.
Report of Proceedings (RP) at 46. Allen admitted sending an e-mail on February 17 to Foley's current boyfriend in which he wrote, "Never turn your back on a Foley." Ex. 7; RP at 41. He explained that he sent this message because he was upset with Foley's family.
¶ 5 After the jury found Allen guilty as charged, the State submitted a statement of criminal history showing that he had five prior Thurston County felony convictions. The State also filed a sentencing manual worksheet showing the sentencing range that corresponded with Allen's offender score. Based on Allen's sentencing range of 41 to 54 months, and the prior offenses that the prosecuting attorney described to the court, the State recommended a 54-month sentence. Defense counsel recognized that a low-end sentence of 41 months would be inappropriate and noted that "with Mr. Allen's criminal history, it would be real easy for the Court to say 54 months," but requested a sentence somewhere between 41 months and the middle of the sentencing range. RP at 80-81. The court found Allen's criminal history "kind of shocking," especially in terms of his three prior convictions of violating protection orders, and imposed concurrent sentences of 50 months in prison and 9 to 18 months of community custody. RP at 81-82; Clerk's Papers (CP) at 52.
¶ 6 Allen now appeals both his convictions and his sentences.

Analysis

I. Interpretation of Former RCW 26.50.110(1) (2006)
¶ 7 Allen first contends that his convictions should be reversed because they did *486 not include acts or threats of violence, which he argues are required for a criminal conviction under the version of RCW 26.50.110(1) in effect when he committed his offenses. If Allen is correct, he was sentenced unlawfully. Hence, this issue may be raised for the first time on appeal. State v. Ford, 137 Wash.2d 472, 477, 973 P.2d 452 (1999). We review questions of statutory interpretation de novo. State v. Bright, 129 Wash.2d 257, 265, 916 P.2d 922 (1996).
¶ 8 Allen contends that former RCW 26.50.110(1) is ambiguous and that under the rule of lenity, such ambiguity must be resolved in his favor. See State v. Spandel, 107 Wash.App. 352, 358, 27 P.3d 613 (2001). The State agrees that the former statute is ambiguous but urges us to resolve that ambiguity by looking at its recent amendment, as we did in State v. Wofford, 148 Wash.App. 870, 201 P.3d 389 (2009).
¶ 9 Former RCW 26.50.110(1) was not a "virtuosic specimen" of legislative drafting. Wofford, 201 P.3d at 392 (citing State v. Bunker, 144 Wash.App. 407, 413, 183 P.3d 1086, review granted, 165 Wash.2d 1003, 198 P.3d 512 (2008)). The provision stated as follows:
Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of the restraint provisions, or of a provision excluding the person from a residence, workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location, or of a provision of a foreign protection order specifically indicating that a violation will be a crime, for which an arrest is required under RCW 10.31.100(2)(a) or (b), is a gross misdemeanor except as provided in subsections (4) and (5) of this section.
Former RCW 26.50.110(1). If a violation involves assaultive contact, it is a felony. RCW 26.50.110(4). And, if the offender has two previous convictions for violating a no-contact order, a third conviction is a felony. RCW 26.50.110(5). Violating a no-contact order is also punishable as contempt of court under RCW 26.50.110(3).
¶ 10 RCW 10.31.100(2)(a), in turn, mandates that the police must arrest any person suspected of violating a Washington domestic violence or no-contact order, but only if they have probable cause to believe that the restrained person has threatened or performed acts of violence, or has entered a prohibited area. Wofford, 201 P.3d at 391; Bunker, 144 Wash.App. at 414, 183 P.3d 1086. RCW 10.31.100(2)(b) requires arrest under similar circumstances for foreign protection orders. Wofford, 201 P.3d at 391. Allen argues, therefore, that for a violation of former RCW 26.50.110(1) to be a criminal offense, the violation must be one that mandates arrest; i.e., one that involves an act or threat of violence.
¶ 11 As we recognized in Wofford, it is unclear which provision of former RCW 26.50.110(1) the final phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" is intended to modify. Wofford, 201 P.3d at 391. Our goal in applying a statute is to carry out the legislature's intent, and if a statute is ambiguous, we may look to principles of statutory construction and legislative history to discern the legislature's intent. State ex rel. Citizens Against Tolls v. Murphy, 151 Wash.2d 226, 242-43, 88 P.3d 375 (2004); Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 808, 16 P.3d 583 (2001).[1] The legislature's intent as to the elements of the crime of violating a no-contact order is plainly evidenced in the 2000 and 2007 amendments to RCW 26.50.110(1). Wofford, 201 P.3d at 392. These amendments show that the legislature always intended criminal penalties for any no-contact order violation.
¶ 12 In 2000, the legislature added the RCW 10.31.100(2) cross reference to former RCW 26.50.110(1). Laws of 2000, ch. 119, *487 § 24. The legislative history confirms that "[a] violation of a no-contact order, foreign protection order or restraining order that does not constitute a class C felony is a gross misdemeanor." 2000 Final Legislative Report, 56th Wash. Leg., at 131. The House of Representatives further summarized the bill, stating that "a police officer shall arrest any person who violates the restraint or exclusion provision of a court order relating to domestic violence." H.B. Rep. on Engrossed Second Substitute S.B. 6400, 56th Leg., Reg. Sess. (Wash.2000) (E2 SSHBR 6400). The policy behind the 2000 amendment was to strengthen domestic violence laws, and the legislature plainly intended that a person commits a crime if he or she violates any no-contact order and that the violation need not involve an act or threat of violence or presence within a specified distance of a location to be criminal. Wofford, 201 P.3d at 393.
¶ 13 The legislature amended RCW 26.50.110 again in 2007. Subsection (1)(a) now provides as follows:
Whenever an order is granted under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or there is a valid foreign protection order as defined in RCW 26.52.020, and the respondent or person to be restrained knows of the order, a violation of any of the following provisions of the order is a gross misdemeanor, except as provided in subsections (4) and (5) of this section:
(i) The restraint provisions prohibiting acts or threats of violence against, or stalking of, a protected party, or restraint provisions prohibiting contact with a protected party;
(ii) A provision excluding the person from a residence, workplace, school, or day care;
(iii) A provision excluding a person from knowingly coming within, or knowingly remaining within, a specified distance of a location; or
(iv) A provision of a foreign protection order specifically indicating that a violation will be a crime.
RCW 26.50.110(1)(a). The legislature specifically stated in the text of the bill that it was not intended to change the substantive law or broaden the scope of law enforcement, and that the reason for the amendment was to make clear the legislature's intent that a willful violation of a no-contact provision of a court order is a criminal offense. Laws of 2007, ch. 173, § 1. The 2007 amendments did not result in a substantive change in the law but clarified that a gross misdemeanor results when the restrained person knows of the order and violates a provision prohibiting acts or threats of violence against, or stalking of, a protected party, or a restraint provision prohibiting contact with a protected party. 2007 Final Legislative Report, at 138. As we stated in Wofford, the subsequent history of a statute may clarify its original legislative intent. Wofford, 201 P.3d at 392. The 2007 amendment clarifies that Allen's interpretation of former RCW 26.50.110(1) is, and has always been, erroneous. Wofford, 201 P.3d at 393.
¶ 14 As we further explained in Wofford, principles of statutory construction also show that conduct for which an arrest is required is not necessary to sustain a conviction under former RCW 26.50.110(1). Wofford, 201 P.3d at 393. Both Madrid and Hogan relied on the last antecedent rule to conclude that former RCW 26.50.110(1) was not ambiguous and that the final clause referring to RCW 10.31.100 modified each preceding clause. Madrid, 145 Wash.App. at 115, 192 P.3d 909; Hogan, 145 Wash.App. at 217-18, 192 P.3d 915; see also In re Sehome Park Care Ctr., Inc., 127 Wash.2d 774, 781-82, 903 P.2d 443 (1995) (last antecedent rule provides that unless contrary intent appears in the statute, a qualifying phrase refers to the last antecedent, and a comma before the qualifying phrase is evidence that the phrase applies to all antecedents). But the last antecedent rule applies only if a statute is ambiguous and should not be read as inflexible or universally binding. In re Pers. Restraint of Smith, 139 Wash.2d 199, 205, 986 P.2d 131 (1999). The last antecedent rule does not control here, because it would render related statutory provisions meaningless. Wofford, 201 P.3d at 394; Bunker, 144 Wash.App. at 418-19, 183 P.3d 1086. For example, RCW 10.99.040 requires that all no-contact orders state that a violation of the order is a crime. *488 This requirement would be meaningless and superfluous if only certain no-contact order violations were criminal. Wofford, 201 P.3d at 394.
¶ 15 Furthermore, RCW 26.50.110(3) provides that "violation of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 . . . shall also constitute contempt of court." (Emphasis added.) Thus, contempt is an additional remedy available to the victim of a no-contact order violation under the plain language of RCW 26.50.110(3). Allen's interpretation would leave the victim with only a contempt remedy; thus, his interpretation would render the "also" in RCW 26.50.110(3) meaningless. Wofford, 201 P.3d at 394.
¶ 16 Allen's interpretation also would lead to illogical results, as we explained in Wofford:
Wofford maintains that a no-contact order violation is criminal only when RCW 10.31.100 requires arrest because of an act or threat of violence or an intrusion into a prohibited location. Under RCW 10.31.100(2)(a), an arrest is required if the restrained person commits acts or threats of violence or enters a residence or other place from which he or she is restrained. But an arrest is not required if the restrained person physically contacts a protected person who is outside the protected area. Thus, if Wofford's interpretation is correct, a restrained person who enters a prohibited place but has no contact with the victim commits a crime, but a person who has nonviolent contact with a protected person outside the protected place does not. The legislature could not have intended such an anomalous result.
Wofford, 201 P.3d at 394-95.
¶ 17 Finally, we reject Allen's request to apply the rule of lenity to reach his interpretation of former RCW 26.50.110(1). The rule of lenity does not apply where statutes can be reconciled in a way that reflects the legislature's clear intent. Wofford, 201 P.3d at 395. Here, the legislature has stated that former RCW 26.50.110(1) was awkwardly drafted and that it has always intended to criminalize violation of domestic violence no-contact orders. Wofford, 201 P.3d at 395. To apply the rule of lenity would frustrate the legislature's intent, and we decline such application in this instance.
¶ 18 The legislature amended RCW 26.50.110 to clarify that Allen's construction of the statute is incorrect. Even without that amendment, Allen's interpretation of the statute is implausible. He was properly convicted of violating a no-contact order.

II. Double Jeopardy
¶ 19 Allen next argues that his two convictions violate double jeopardy. Allen did not raise this argument at trial, but he may raise it for the first time on appeal because it implicates a manifest error affecting a constitutional right. State v. Turner, 102 Wash. App. 202, 206, 6 P.3d 1226 (2000).
¶ 20 The double jeopardy provisions of the state and federal constitutions protect a defendant from being punished multiple times for the same offense. State v. Adel, 136 Wash.2d 629, 632, 965 P.2d 1072 (1998); U.S. Const. amend. V; Wash. Const. art. I, § 9. If Allen's two e-mails to Foley constitute just one criminal act, his two convictions violate double jeopardy by punishing him twice for the same offense.
¶ 21 If a defendant is charged with violating the same statutory provision more than once, multiple convictions can withstand a double jeopardy challenge only if each is a separate "unit of prosecution." Turner, 102 Wash.App. at 206, 6 P.3d 1226. The unit of prosecution for a crime may be an act or a course of conduct. State v. Root, 141 Wash.2d 701, 710, 9 P.3d 214 (2000). The first step in the unit of prosecution inquiry is to analyze the criminal statute. In re Pers. Restraint of Davis, 142 Wash.2d 165, 172, 12 P.3d 603 (2000). We review statutory construction de novo. State v. Berry, 129 Wash. App. 59, 69, 117 P.3d 1162 (2005).
¶ 22 Both the former and current versions of RCW 26.50.110(1) make it unlawful for a person to violate any restraint provision contained in a no-contact order. See State v. Snapp, 119 Wash.App. 614, 625, 82 P.3d 252 (2004) (must prove a knowing violation of restraint provisions in no-contact order to *489 convict under RCW 26.50.110(1)). Thus, a violation constitutes a crime. The order in place here prohibited Allen from having either direct or indirect contact with Foley. Allen argues that the statute makes it unclear whether e-mails sent on different dates but read on the same date constitute two violations of that order, and he maintains that the rule of lenity requires this ambiguity to be resolved in his favor. Allen maintains that the only violation punishable under RCW 26.50.110(1) occurred when Foley read his e-mail messages.
¶ 23 The State responds that a knowing violation under the statute rests on the defendant's rather than the victim's actions. We agree, noting that a defendant's three charges for violating a no-contact order were based on three different letters to the victim in State v. Parmelee, 108 Wash.App. 702, 705-06, 32 P.3d 1029 (2001). When the victim received or read the letters was not at issue; the facts showed that she did not even open some of them. Parmelee, 108 Wash. App. at 705, 32 P.3d 1029. Under less analogous facts, the defendant's action in setting a fire, rather than the damage that resulted, formed the unit of prosecution in State v. Westling, 145 Wash.2d 607, 612, 40 P.3d 669 (2002). "Because he set only one fire that damaged three vehicles, there is factually only one unit of prosecution." Westling, 145 Wash.2d at 612, 40 P.3d 669; see also Davis, 142 Wash.2d at 174, 12 P.3d 603 (when defendant's two drug manufacturing operations were differentiated by time, location, or intended purpose, defendant could be convicted twice for possession with intent to manufacture without violating double jeopardy).
¶ 24 Here, Allen sent Foley different e-mail messages on different days. The no-contact order prohibited him from contacting her in this manner, and his punishment for those violations should not depend on when Foley happened to read her e-mail. Allen's two convictions for violating a domestic violence no-contact order did not violate double jeopardy.

III. Offender Score
¶ 25 Allen raises two challenges to his offender score. He contends that the trial court erred in including three of his five prior convictions in his offender score because the State provided insufficient proof of those prior convictions, and he also argues that the trial court erred in counting his two current offenses separately.[2]

A. Prior Convictions

¶ 26 Allen may raise this offender score challenge for the first time on appeal. Ford, 137 Wash.2d at 477-78, 973 P.2d 452. We review a sentencing court's calculation of an offender score de novo. State v. Bergstrom, 162 Wash.2d 87, 92, 169 P.3d 816 (2007). Generally, the trial court calculates an offender score by adding together the current offenses and the prior convictions. RCW 9.94A.589(1)(a). The State bears the burden of proving the existence of prior convictions by a preponderance of the evidence. In re Pers. Restraint of Cadwallader, 155 Wash.2d 867, 876, 123 P.3d 456 (2005). The best evidence to establish prior convictions is the production of a certified copy of the prior judgment and sentence. Bergstrom, 162 Wash.2d at 93, 169 P.3d 816. In determining a sentence, the trial court may rely on information that is admitted, acknowledged, or proved in a trial or at the time of sentencing. RCW 9.94A.530(2).
¶ 27 Allen argues that the State failed to offer any proof of the three prior convictions at issue, and that his failure to object to the offender score it submitted did not constitute acknowledgement on his part. See Ford, 137 Wash.2d at 483, 973 P.2d 452 (acknowledgement does not encompass bare assertions by the State unsupported by the evidence). The State responds that Allen acknowledged his criminal history by failing to object to the statement of criminal history and sentencing manual worksheet it filed with the court, and by failing to object when the prosecuting attorney described his criminal history to the court at sentencing. See Former RCW 9.94A.530(2) (2007) (acknowledgement includes not objecting to information included in presentencing reports). Furthermore, Allen *490 did not object when both the State and the court referred to the 41- to 54-month sentencing range based on that history, and defense counsel implicitly accepted that range in arguing that even if Allen did not deserve a low-end sentence of 41 months, he should be considered a mid-range offender rather than one who deserved a 54-month sentence.
¶ 28 The Washington Supreme Court recently decided, however, that a defendant's tacit acceptance of his criminal history does not constitute the acknowledgement needed to relieve the State of its obligation to establish criminal history by a preponderance of the evidence. State v. Mendoza, ___ Wash. ___, 205 P.3d 113, 120 (2009). If a defendant does not affirmatively acknowledge his criminal history and the State does not provide facts or information establishing that history, resentencing is required. Mendoza, 205 P.3d at 120.
¶ 29 Here, Allen did not affirmatively acknowledge his criminal history and the State did not provide sufficient evidence to establish that its description of that history was accurate. See Mendoza, 205 P.3d at 120 (bare assertions as to criminal history do not substitute for the facts and information a sentencing court requires). Consequently, we must remand for resentencing, during which the State may submit additional evidence to prove Allen's criminal history. See Mendoza, 205 P.3d at 120 (where the defendant does not object at sentencing and the State has not had the opportunity to put on its evidence, it is appropriate to allow additional evidence at resentencing).

B. Current Convictions

¶ 30 Allen also argues that his offender score is incorrect because his two current offenses should have counted as one under the same criminal conduct rule. Allen's acceptance of the sentencing range based on the separate scoring of his offenses waives this argument on appeal. See State v. Nitsch, 100 Wash.App. 512, 519, 997 P.2d 1000 (2000). But, because he argues in the alternative that he received ineffective assistance of counsel when his attorney failed to raise the same criminal conduct issue during sentencing, we address the relevant law. See State v. Thomas, 109 Wash.2d 222, 225, 743 P.2d 816 (1987) (to prove ineffective assistance of counsel, defendant must show that his attorney's performance was deficient and that the deficiency prejudiced him).
¶ 31 If two current offenses encompass the same criminal conduct, they count as one point in calculating the defendant's offender score. RCW 9.94A.589(1)(a); State v. Haddock, 141 Wash.2d 103, 108, 3 P.3d 733 (2000). The same criminal conduct rule requires two or more crimes to involve the same criminal intent, the same time and place, and the same victim. RCW 9.94A.589(1)(a). If one of these elements is missing, the offenses must be counted individually toward the offender score. Haddock, 141 Wash.2d at 110, 3 P.3d 733.
¶ 32 Allen's two convictions for violating a no-contact order involved the same criminal intent and the same victim. He contends that because Foley opened his e-mail messages at the same time and place, the third element of the same criminal conduct rule is satisfied as well.
¶ 33 But, having already held that Allen's offenses occurred when he sent the e-mails on different dates, we reject his current argument that they occurred when Foley read her e-mail. Consequently, Allen's two offenses did not involve the same time and place and do not constitute the same criminal conduct. He did not receive ineffective assistance when his attorney failed to raise this argument during sentencing.[3]

IV. Statutory Maximum Sentence
¶ 34 Allen argues here that the trial court unlawfully sentenced him beyond the statutory maximum when it imposed sentences of 50 months plus 9 to 18 months of community custody for each of his convictions. Because Mendoza requires us to remand for resentencing, we do not address this issue.
*491 We affirm the defendant's convictions but remand for resentencing.
HOUGHTON, P.J.
¶ 35 I concur but write separately to explain my departure from my agreement with State v. Madrid, 145 Wash.App. 106, 192 P.3d 909 (2008). As the majority notes, "different panels of our court have held that former RCW 26.50.110(1) [2000] is unambiguous and that a no-contact order violation is not a criminal offense unless the violation was one for which an arrest is required under RCW 10.31.100(2)." Majority, at 486 n. 1. I served on one of those panels, concurring in Madrid. In State v. Wofford, 148 Wash. App. 870, 201 P.3d 389 (2009), I wrote a separate concurrence explaining my reconsideration of Madrid. For the reasons set forth here and in Wofford, I find no reversible error here and I affirm.
HUNT, J. (concurring).
¶ 36 I concur. But I write separately to explain my departure from my previous concurrences with contrary holdings in State v. Madrid, 145 Wash.App. 106, 192 P.3d 909 (2008), and State v. Hogan, 145 Wash.App. 210, 192 P.3d 915 (2008). Unlike Judge Houghton, also writing a separate concurrence, I did not sit on the panel that recently decided State v. Wofford, 148 Wash.App. 870, 201 P.3d 389 (2009), in which she similarly departed from her previous contrary position in Madrid.
¶ 37 Judge Armstrong's majority opinions in both Wofford and the instant case, Allen, together with Division One's decision in Bunker,[4] persuade me (1) to consider the effect of the legislature's 2007 amendment and its accompanying findings on the meaning of former RCW 26.50.110(1) (2006)[5] as it applies here; and (2) to reconsider our earlier interpretation of this statute in Madrid and Hogan. Although I believe our "corollary to the last antecedent rule" analysis in Madrid and Hogan was grammatically correct, I also believe that Wofford and Bunker are jurisprudentially correct in relying on the 2007 amendment to former RCW 26.50.110(1) (2006), removing the cross reference to RCW 10.31.100(2), as indicative of the legislature's intent that all violations of no contact orders are gross misdemeanors.

I. Madrid

¶ 38 Unlike the panels in Wofford and Allen, the panel in Madrid did not consider whether the 2007 amendment shed light on the legislature's intent for former RCW 26.50.110(1) (2000), primarily because the issue was not before us.[6] Neither party in Madrid addressed whether the legislature's 2007 amendment had any effect on former RCW 26.50.110(1) (2000).[7] Thus, we focused our analysis on "the criminal statutes in effect at time the crime was committed," i.e. the 2000 amendment's inclusion of the cross-reference to RCW 10.31.100(2). Madrid, 145 Wash.App. at 113, 192 P.3d 909. We noted the 2007 legislature's "findings that it meant `to restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense and shall be enforced accordingly to preserve the integrity and intent of the domestic violence act.' Laws of 2007, ch. 173, § 1." Id.
¶ 39 But neither party argued, nor did we consider, that these 2007 amendment findings were an expression of the legislature's intent to depart from the general rule of applying the criminal statute in effect at the *492 time the crime was committed. Thus, we followed RCW 10.01.040.[8] and focused on
whether the legislature's addition of the cross reference to RCW 10.31.100(2) in 2000 made RCW 26.50.110(1) ambiguous such that we should (1) apply the rule of lenity, or (2) look outside the statute's plain meaning for legislative intent.
Madrid, 145 Wash.App. at 114, 192 P.3d 909. Although both parties in Madrid argued that former RCW 26.50.110(1) was ambiguous, we held that the statute was not ambiguous. Therefore, we did not apply the rule of lenity or look "look outside the statute's plain meaning for contrary legislative intent." Id.
¶ 40 We then held:
A careful reading of former RCW 26.50.110(1) shows that it is not ambiguous. According to the amended statute's plain language, the State could not convict an individual of a gross misdemeanor violation of a protection order under chapter 26.50 RCW unless the violation warranted an arrest under RCW 10.31.100(2)(a) or (b).
Madrid, 145 Wash.App. at 114, 192 P.3d 909. As I have already noted, however, we did not address in Madrid the pivotal issue that undergirds the contrary holdings in Wofford, Bunker, and Allen.

II. Hogan

¶ 41 In Hogan, decided about the same time as Madrid, we focused on the "corollary to the last antecedent rule" of statutory construction based on Hogan's following argument:
[F]ormer RCW 26.50.110(1) criminalized only violations "for which an arrest is required under RCW 10.31.100(2)(a) or (b)." CP at 30. Hogan based his argument on the legislature's placement of the comma immediately preceding this phrase. Referencing the corollary to the last antecedent rule and legislative history, Hogan convinced the trial court that the State failed to prove his violations were crimes under former RCW 26.50.110(1).
Hogan, 145 Wash.App. at 214, 192 P.3d 915. Hogan persuaded us, too.
¶ 42 Both parties in Hogan filed their briefs before the effective date of the 2007 amendment. Thus, as in Madrid, in Hogan the State did not argue that the legislature's 2007 amendment shed light on its intended meaning of the interplay between former RCW 26.50.110(1) and RCW 10.31.100(2)(a) or (b). And, as in Madrid, our analysis in Hogan did not address this point. Instead, we focused on the history of former RCW 26.50.110(1) and the legislature's 2000 amendment, which added the cross-reference to RCW 10.31.100(2)(a) or (b), apparently in response to a 1996 Washington Supreme Court case, for which the United States Supreme Court denied certiorari in 2000.[9]

III. Bunker and Wofford

¶ 43 Like Judge Quinn-Brintnall, who expressly agreed with Bunker in her dissent in Hogan, 145 Wash.App. at 221, 223, 192 P.3d 915,[10] I now also find persuasive the following *493 analysis in Bunker,[11] which Division One of our court filed several weeks before we filed Madrid and Hogan:
[T]raditional principles of statutory construction also demonstrate that the legislature always intended to criminalize violations of domestic violence no-contact orders. Contending that this is not the case, Bunker and Williams make much of the "last antecedent rule" and the rule of lenity (albeit without ever articulating precisely how those rules apply to former RCW 26.50.110). In basing their statutory interpretation argument solely on these rules, however, Bunker and Williams ignore more fundamental principles of statutory construction.
The last antecedent rule states that "unless a contrary intention appears in the statute, qualifying words and phrases refer to the last antecedent. . . . Yet the presence of a comma before the qualifying phrase is evidence the qualifier is intended to apply to all antecedents instead of only the immediately preceding one." City of Spokane v. Spokane County, 158 Wash.2d 661, 673, 146 P.3d 893 (2006) (internal citations and quotation marks omitted) (quoting Berrocal v. Fernandez, 155 Wash.2d 585, 593, 121 P.3d 82 (2005)). Thus, as applied to former RCW 26.50.110, this rule would appear to support Bunker's and Williams's contention that the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" modifies every preceding clause, up to and including the phrase "violation of the restraint provisions." Moreover, if the last antecedent rule were the sole principle of statutory construction[[12]] applicable to former RCW 26.50.110, the statute would indeed appear to allow the imposition of criminal penalties for only those no-contact order violations for which the legislature has made arrest mandatory.
By urging us to rely exclusively on the last antecedent rule, however, Bunker and Williams effectively encourage us to disregard the principle that "[a]n act must be construed as a whole, considering all provisions in relation to one another and harmonizing all rather than rendering any superfluous." State v. George, 160 Wash.2d 727, 738, 158 P.3d 1169 (2007). This we will not do.
Even a cursory examination of former RCW 26.50.110's other subsections reveals that the legislature did not intend for contempt of court sanctions to be the primary penalty for domestic violence no-contact order violations. See former RCW 26.50.110(3)[2000] ("violation of an order issued under this chapter, chapter 7.90, 10.99, 26.09, 26.10, 26.26, or 74.34 RCW, or of a valid foreign protection order as defined in RCW 26.52.020, shall also constitute contempt of court") (emphasis added). Moreover, Bunker and Williams fail to explain why, if the legislature had not intended to impose criminal penalties for violations of domestic violence no-contact orders, it has required that each and every no-contact order issued by a court proclaim that "[v]iolation of this order is a criminal offense." RCW 10.99.040(4)(b). An appellate court "may not interpret any part of a statute as meaningless or superfluous." State v. Lilyblad, 163 Wash.2d 1, 11, 177 P.3d 686 (2008). To give RCW 26.50.110(1) the construction that Bunker and Williams seek would be to do precisely that with respect to these provisions. Notwithstanding the last antecedent rule, the structure of the statute as a whole indicates that the legislature intended the phrase "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" to modify the previous two complete clauses, respectively. That is, "RCW 10.31.100(2)(a)" refers to the clause "or of a provision excluding the person from a residence, *494 workplace, school, or day care, or of a provision prohibiting a person from knowingly coming within, or knowingly remaining within, a specified distance of a location," while "RCW 10.31.100(2) . . . (b)" refers to "or of a provision of a foreign protection order specifically indicating that a violation will be a crime." Former RCW 26.50.110 [2000].[[13]]
. . . .
The legislature has amended RCW 26.50.110 explicitly to clarify that the construction of the statute that Bunker and Williams seek is incorrect. That amendment applies retroactively to Bunker and Williams because it was for the sole purpose of removing a statutory ambiguity, and changed no substantive law.
Bunker, 144 Wash.App. at 418-420, 183 P.3d 1086.[14] In Wofford, we relied heavily on the above analysis in Bunker. In turn, we rely heavily on Wofford here in Allen.

IV. 2007 Amendment
¶ 44 As we noted in Wofford, as long as there has not been an intervening contradictory judicial construction of a statute, we may look to a statute's subsequent history to help determine the legislature's intent where, as here, the legislature has indicated in the subsequent legislation that the new legislation was intended to clarify the previous version of the statute. Wofford, 148 Wash. App. at 879, 201 P.3d 389 (citing Woods v. Bailet, 116 Wash.App. 658, 665, 67 P.3d 511 (2003)); see also Rozner v. City of Bellevue, 116 Wash.2d 342, 349, 804 P.2d 24 (1991); State v. Posey, 130 Wash.App. 262, 274, 122 P.3d 914 (2005), aff'd in relevant part, reversed in part on other grounds, 161 Wash.2d 638, 167 P.3d 560 (2007); Littlejohn Constr. Co. v. Dep't of Labor & Indus., 74 Wash.App. 420, 427, 873 P.2d 583 (1994).
¶ 45 We filed our decisions in Madrid and Hogan after, not before, the 2007 amendments; thus, the 2007 amendments did not contravene any appellate decisions of which I am aware. Therefore, under Posey, (1) in Madrid, we should have considered the legislature's 2007 amendment to the statute if the parties had asserted its removal of the cross-reference to RCW 10.31.100(2) as controlling; and (2) in Hogan, instead of relying on the legislature's 2000 amendment, which added the cross-reference to RCW 10.31.100(2), we should have considered the 2007 amendment, which removed the cross-reference in order to "restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense." Madrid, 145 Wash.App. at 113, 192 P.3d 909.
¶ 46 Accordingly, I now depart from Madrid and Hogan, concur in Judge Armstrong's analysis here, join him in holding that under RCW 26.50.110(1) any willful violation of a no-contact provision of a court order is a criminal offense, and affirm.[15]
NOTES
[1] We recognize that different panels of our court have held that former RCW 26.50.110(1) is unambiguous and that a no-contact order violation is not a criminal offense unless the violation was one for which an arrest is required under RCW 10.31.100(2). See State v. Madrid, 145 Wash. App. 106, 108, 192 P.3d 909 (2008); State v. Hogan, 145 Wash.App. 210, 212, 192 P.3d 915 (2008). For the reasons stated herein, we disagree with the analysis in those cases.
[2] Allen stipulated to the remaining two prior convictions.
[3] Having addressed Allen's earlier issues on the merits, we need not consider his alternative claim that he received ineffective assistance of counsel when his attorney failed to raise these issues below.
[4] State v. Bunker, 144 Wash.App. 407, 418-20, 183 P.3d 1086 (2008).
[5] We note that the legislature also amended this statute in 2006. See Laws of 2006, ch. 138 § 25. The amendments are not relevant here.
[6] We noted only that the 2007 legislature "removed the cross-reference to RCW 10.31.100(2), which Madrid relies upon here. See Laws of 2007, ch. 173, § 2." Madrid, 145 Wash.App. at 113, 192 P.3d 909.
[7] See Madrid, 145 Wash.App. at 113, n. 10, 192 P.3d 909. Instead, Madrid focused on the rule of lenity. And the State argued that "the legislature created an unintended statutory ambiguity when it amended several domestic violence statutes in 2000, including adding the cross reference in former RCW 26.50.110(1) to RCW 10.31.100(2)." Madrid, 145 Wash.App. at 113, 192 P.3d 909.
[8] Madrid, 145 Wash.App. at 113, 192 P.3d 909.
[9] We noted in Hogan:

Our Supreme Court interpreted an even earlier version of RCW 26.50.110 (1996) in State v. Chapman, 140 Wash.2d 436, 448, 998 P.2d 282, cert. denied, 531 U.S. 984, 121 S.Ct. 438, 148 L.Ed.2d 444 (2000); but the legislature amended RCW 25.50.110 in 2000. Before this amendment, violation of a domestic violence no-contact order under former RCW 10.99.050(2) (1997) was a gross misdemeanor and a third violation was a felony. But in 2000, the legislature amended the statute, moving most of the language to RCW 26.50.110 and adding the "for which an arrest is required under RCW 10.31.100(2)(a) or (b)" language at issue in this case. Laws of 2000, ch. 119 § 24. Accordingly, Chapman, is no longer binding precedent on this court.
Before we continue our analysis, we note that the legislature unanimously amended RCW 26.50.110(1) during the 2007 session. See Laws of 2007, ch. 173. The legislature removed the cross-reference to RCW 10.31.100(2), which Hogan relies on here. See Laws of 2007, ch. 173, § 2. The legislature also stated in its findings that it meant "to restore and make clear its intent that a willful violation of a no-contact provision of a court order is a criminal offense and should be enforced accordingly to preserve the integrity and intent of the domestic violence act." Laws of 2007, ch. 173, § 1.
Hogan, 145 Wash.App. at 215, 192 P.3d 915 (footnote omitted).
[10] Because the Hogan majority found the statute unambiguous, we did not address Bunker or its analysis. Hogan, 145 Wash.App. at 218 n. 4, 192 P.3d 915. Nor did we address Bunker in Madrid.
[11] The Washington Supreme Court recently granted review of Bunker. 165 Wash.2d 1003, 198 P.3d 512 (2008). As of the date we filed this opinion, we are unaware of whether Bunker has been set for oral argument.
[12] I acknowledge that Division One's characterization of the "last antecedent rule" as a principle of statutory construction differs somewhat from my characterization of the rule as a "grammatical rule." This difference in characterization does not affect my analysis and agreement with Division One that we must look to the legislature's express intent that its 2007 amendment "clarify" RCW 26.50.110.
[13] Holding that the rule of lenity did not apply, the Bunker court ruled:

The rule of lenity is similarly unavailing to the argument advanced by Bunker and Williams. "[U]nder the rule of lenity, where two possible statutory constructions are permissible, we construe the statute strictly against the State in favor of a criminal defendant." State v. B.E.K., 141 Wash.App. 742, 745, 172 P.3d 365 (2007) (citing State v. Gore, 101 Wash.2d 481, 485-86, 681 P.2d 227 (1984)). "But the rule of lenity does not apply where statutes can be reconciled in a way that reflects the legislature's clear intent." State v. R.J., 121 Wash. App. 215, 217 n. 2, 88 P.3d 411 (2004). Here, every indication is that former RCW 26.50.110 was merely awkwardly drafted, and that the legislature always intended to criminalize violations of domestic violence no-contact orders. This being the case, we will not apply the rule of lenity in frustration of the legislature's intent.
144 Wash.App. at 420, 183 P.3d 1086.
[14] I have included this extensive quotation from Bunker because I could not improve its persuasive value by trying to paraphrase it or by including shorter excerpts.
[15] As Judge Quinn-Brintnall noted in her dissent in Hogan, it is difficult to imagine that the legislature intended former RCW 26.50.110(1) to criminalize an inmate's contact through a glass partition with the party protected by the no-contact order, who came to visit him in jail. Here, it is difficult to imagine that the legislature intended two allegedly inadvertent emails to the protected party to trigger 52 months imprisonment for Allen. Nevertheless, these choices are for the legislature to make, not the courts; and the legislature has spoken in its 2007 amendment, before we rendered our decisions on this issue.