# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 48053-1-II |
| Respondent, | |
| v. | |
| JEROME PATRICK MEDINA, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, P.J. — Jerome Medina appeals his convictions of eight counts of felony violation of a court order.[1] He argues (1) the State provided insufficient evidence to support his convictions, (2) the no-contact order prohibiting contact except by e-mail was unconstitutionally vague, (3) the trial court violated double jeopardy by entering multiple convictions for messages sent within the same day, and (4) the trial court exceeded its authority by imposing a $100 "expert witness fund" obligation. We affirm Medina's convictions, but remand to strike the expert witness fund obligation.

## FACTS

Medina and Heather Mattox dated for a few years and have a child in common. A no-contact order prohibits Medina from contacting Mattox, except "written contact by U.S. Post Office or e-mail is permitted ONLY." Ex. 16.

---

[1] RCW 26.50.110(5).

No. 48053-1-II

The State charged Medina with nine counts of felony violation of a court order against a family or household member.[2]  Count I is based on a picture sent to Mattox's phone showing Medina holding a shotgun with the caption, "I'm ready."  Ex. 1.  Counts II-IX are based on several text messages sent to Mattox's phone on April 28, 2014.  The picture and text messages were sent from a phone number Mattox recognized as being associated with Medina.

A jury found Medina guilty of counts I-III and counts V-IX, but rendered no verdict on count IV.  The sentencing court concluded that Counts V-IX included the same criminal conduct and therefore merged those counts for sentencing purposes.  The sentencing court imposed various legal financial obligations, including a $100 contribution to the Kitsap County expert witness fund.

ANALYSIS

I. SUFFICIENT EVIDENCE

Medina argues that the State produced insufficient evidence to support his convictions because the State presented no evidence that he sent the messages to Mattox as text messages as opposed to e-mails.  We disagree.

Sufficient evidence supports a conviction if, when viewed in the light most favorable to the State, any rational trier of fact could have found the essential elements of the charged crime proved beyond a reasonable doubt.  *State v. Hosier*, 157 Wn.2d 1, 8, 133 P.3d 936 (2006).  A claim of insufficient evidence admits the truth of the State's evidence and all reasonable inferences that can be drawn therefrom.  *State v. Homan*, 181 Wn.2d 102, 106, 330 P.3d 182 (2014).  We draw all reasonable inferences from the evidence in favor of the State and interpret

---

[2] RCW 10.99.020.

2

them most strongly against the defendant. *Hosier*, 157 Wn.2d at 8. In the sufficiency context, we consider circumstantial evidence as probative as direct evidence. *State v. Goodman*, 150 Wn.2d 774, 781, 83 P.3d 410 (2004). We defer to the fact finder on issues of conflicting testimony, witness credibility, and persuasiveness of the evidence. *State v. Thomas*, 150 Wn.2d 821, 874-75, 83 P.3d 970 (2004).

To prove felony violation of a no-contact order, the State must prove beyond a reasonable doubt that Medina knew of the existence of a no-contact order, and that he violated a provision of that order. *See* RCW 26.50.110.

For the first time on appeal, Medina argues that because the messages he sent to Mattox could have been sent via e-mail and then converted to text messages via email-to-text technology, the State failed to prove the messages violated the provisions of the no-contact order, which permitted written contact via e-mail.[3] He contends that because the State did not offer evidence as to *how* Medina *sent* the messages, no rational jury could have found beyond a reasonable doubt that Medina violated the court order. But Medina misunderstands our standard of review in the sufficiency context.

Taking all the State's evidence as true and drawing all reasonable inferences therefrom in favor of the State, the evidence was sufficient to support Medina's convictions. The State presented evidence that Mattox received text messages on her phone, which listed a phone number as the sender. Mattox testified that she recognized the phone number as one associated with Medina. From this evidence, a rational juror could have found beyond a reasonable doubt that Medina sent the messages to Mattox as text messages in violation of the no-contact order.

---

[3] Medina's defense theory at trial was that he had not personally sent the offending messages.

3

## II. VAGUENESS

Medina also argues that the court order prohibiting contact with Mattox except by e-mail is unconstitutionally vague and therefore violates his due process rights. We disagree.

The due process vagueness doctrine under the Fourteenth Amendment requires that citizens have fair warning of proscribed conduct. *State v. Bahl*, 164 Wn.2d 739, 752, 193 P.3d 678 (2008) (plurality opinion). An order is unconstitutionally vague if it is insufficiently definite such that ordinary people cannot understand what conduct is proscribed, or if it does not provide ascertainable standards of guilt to protect against arbitrary enforcement. *Bahl*, 164 Wn.2d at 752-53.

"Generally, 'imposing conditions of community custody is within the discretion of the sentencing court and will be reversed if manifestly unreasonable.'" *State v. Sanchez Valencia*, 169 Wn.2d 782, 791-92, 239 P.3d 1059 (2010) (quoting *Bahl*, 164 Wn.2d at 753). An unconstitutional condition is manifestly unreasonable. *Bahl*, 164 Wn.2d at 753. Unlike statutes or ordinances, conditions of community custody are not presumed to be constitutional. *Sanchez Valencia*, 169 Wn.2d at 793.

In deciding whether a term is unconstitutionally vague, we do not consider the term in a vacuum, rather, it is considered in the context in which the term is used. *Bahl*, 164 Wn.2d at 754. "If 'persons of ordinary intelligence can understand what the [law] proscribes, notwithstanding some possible areas of disagreement, the [law] is sufficiently definite.'" *Bahl*, 164 Wn.2d at 754 (alterations in original) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)). "'[A] community custody condition is not unconstitutionally vague merely because a person cannot predict with complete certainty the exact point at which his

actions would be classified as prohibited conduct.'" *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010) (internal quotations omitted) (quoting *State v Sanchez Valencia*, 148 Wn. App. 302, 321, 198 P.3d (2009)).

Contrary to Medina's contention, an ordinary person would understand what the term "e-mail" as used in the no-contact order entails. E-mail, as used in common practice, means electronic mail, or mail sent electronically from one network system to another. An ordinary person would associate the act of "e-mailing" with sending a written message from one e-mail address to another e-mail address. Whereas a "text message" is ordinarily associated with a short SMS (short message service) message sent directly between cell phones.

Medina urges us to rely on one particular dictionary definition of e-mail, namely "a means or system for transmitting messages electronically (as between computers on a network)."[4,5] Br. of Appellant 10. He argues that this definition could encompass text messages, Facebook messages, or communications on other social networking platforms. Alternative definitions offered for the term "e-mail" offer slight variations including (1) "a system for sending messages from one computer to another computer," (2) "messages that are sent electronically from one computer to another," (3) "messages sent and received electronically

---

[4] Merriam-Webster Dictionary of the English Language, http://www.merriam-webster.com/dictionary/e-mail (accessed Oct. 28, 2016).

[5] We may consider the plain and ordinary meaning of a term as set forth in a standard dictionary. *Bahl*, 164 Wn.2d at 754.

through an e-mail system." On the other hand, "text message" is defined as "a short message sent electronically usually from one cell phone to another."[6]

While these dictionary definitions may not provide the most clear-cut distinctions between "e-mail" and "text message" because they are both forms of electronic communication, to an ordinary person the distinction between the *forms* of electronic communication remains clear. We hold that the ordinary meaning of the word provides sufficient guidance regarding what kind of contact in this context is permitted and which is prohibited.

Medina also argues that the no-contact order fails to provide ascertainable standards to protect against arbitrary enforcement. He reiterates the possibility that a message could be sent as an e-mail but received as a text message through the use of e-mail-to-text technology. As previously discussed, an ordinary person would understand what conduct is proscribed and what conduct is permitted by the no-contact order. This is not a condition like that in *Bahl* or *State v. Sansone*, 127 Wn. App. 630, 638, 111 P.3d 1251 (2005), where courts held that community custody conditions that required further definition from community custody officers were unconstitutionally vague for their lack of ascertainable standards for enforcement. *See Bahl*, 164 Wn.2d at 758.

Here, the sentencing condition is definite and enforceable; it is not unconstitutionally vague.

---

[6] Merriam-Webster Dictionary of the English Language, http://www.merriam-webster.com/dictionary/text%20message (accessed Oct. 28, 2016).

III. DOUBLE JEOPARDY

Medina also argues that the trial court violated the prohibition on double jeopardy by entering convictions for seven different counts based on multiple messages sent over the course of a day. We disagree.

The Fifth Amendment to the United States Constitution provides that no "person be subject for the same offense to be twice put in jeopardy of life or limb." Similarly, article I, section 9 of the Washington Constitution provides, "No person shall . . . be twice put in jeopardy for the same offense." These double jeopardy provisions prohibit, among other things, multiple convictions for the same offense. *State v. Hall*, 168 Wn.2d 726, 729-30, 230 P.3d 1048 (2010). We review double jeopardy claims de novo. *State v. Villanueva-Gonzalez*, 180 Wn.2d 975, 979-80, 329 P.3d 78 (2014).

"If a defendant is charged with violating the same statutory provision more than once, multiple convictions can withstand a double jeopardy challenge only if each is a separate 'unit of prosecution.'" *State v. Allen*, 150 Wn. App. 300, 313, 207 P.3d 483 (2009) (quoting *State v. Turner*, 102 Wn. App. 202, 206, 6 P.3d 1226 (2000)). "The first step in the unit of prosecution inquiry is to analyze the criminal statute." *Allen*, 150 Wn. App. at 313. Once the unit of prosecution is determined, we must conduct a factual analysis to determine if more than one unit of prosecution is present. *Hall*, 168 Wn.2d at 735.

RCW 26.50.110(1) makes it unlawful for a person to violate any restraint provision contained in a no-contact order. We have held that an individual violation of a no-contact order constitutes a single unit of prosecution. *Allen*, 150 Wn. App. at 313-14 (each act of sending an e-

7

mail constituted a statutory violation); *see also State v. Brown*, 159 Wn. App. 1, 10-13, 248 P.3d 518 (2010).

Here, the essential question is whether Medina's multiple text messages to Mattox constituted one continuing offense or if Medina committed the crimes anew with each message. Medina argues that messages sent on the same day constitute just one violation of the no-contact order. The State responds that each message was a discreet communication with Mattox in violation of the no-contact order and therefore the multiple counts did not violate double jeopardy. Because Washington case law makes it clear that each individual contact in violation of a no-contact order constitutes one unit of prosecution, we agree with the State.

As Medina correctly points out, the multiple violations in *Allen* and *Brown* were based on violations occurring on separate days. However, the court's focus in those cases was not on the temporal separation between each violation. Rather, the court focused on the defendant's actions. *See Allen*, 150 Wn. App. at 313-14 (each act of sending an e-mail constituted a statutory violation). Indeed, in *Brown*, Division One of this court emphasized that RCW 26.50.110 criminalizes each contact, explaining, "The Supreme Court 'has consistently interpreted the legislature's use of the word 'a' in a criminal statute as authorizing punishment for each individual instance of criminal conduct, even if multiple instances of such conduct occurred *simultaneously*." *Brown*, 159 Wn. App. at 11 (emphasis added) (quoting *State v. Ose*, 156 Wn.2d 140, 147, 124 P.3d 635 (2005)).

Each time Medina messaged Mattox, he took the affirmative action of picking up the phone, typing a message to Mattox, and pressing "send." Consequently, Medina's seven convictions of violation of a no-contact order did not violate double jeopardy protections.

No. 48053-1-II

IV. Expert Witness Fund

Finally, Medina argues that the trial court exceeded its statutory authority by ordering him to pay $100 into the Kitsap County expert witness fund. We agree.

The trial court's authority to impose costs and fees is statutory. *See State v. Hathaway*, 161 Wn. App. 634, 652-53, 251 P.3d 253 (2011); RCW 10.01.160. Under RCW 10.01.160(2) "costs shall be limited to expenses specially incurred by the State in prosecuting the defendant." RCW 10.01.160(2) also provides that costs "cannot include expenses . . . in connection with the maintenance and operation of government agencies that must be made by the public irrespective of specific violations of law."

Here, Medina's case did not require the testimony of an expert witness. Therefore, the trial court exceeded its statutory authority by imposing costs that were not incurred by the State in Medina's prosecution.

We affirm Medina's convictions, but remand to strike the expert witness fund obligation.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Lee, J.

_____
Sutton, J.

9