IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 40427-7-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ERIC D. DENNY II, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

Staab, J. — Following a jury trial, Eric Denny was convicted of residential burglary. The trial court found that his offender score was "8" and sentenced him to total confinement for 60 months. On appeal, he raises two issues. He contends that his attorney was ineffective for failing to request a lesser-included jury instruction for first degree trespass. Denny also argues that his offender score was miscalculated. The State disagrees that Denny's offender score was miscalculated but concedes that the court failed to make an affirmative finding that Denny was on community custody at the time of his current offense. The State asks for a limited remand to enter this finding.

We affirm Denny's conviction but vacate his sentence and remand for resentencing. The limited remand requested by the State assumes that the record before the trial court would support a finding that Denny was on community custody at the time of his current offense. While the record suggests that Denny was on community custody, it is not conclusive. We decline to address the additional sentencing issues raised by Denny as he can raise them at his resentencing.

BACKGROUND

On the morning of April 27, 2023, Mark[1] was at his home near his parents' property when he heard a shuffling noise outside. Looking out the window he saw Denny walk through the backyard and enter his parents' house through the access door to the master bedroom. Mark quickly grabbed his baseball bat and rushed to the access door.

When Mark entered the master bedroom, he saw Denny exiting the room and going further into the main house. Mark yelled and Denny turned around and charged Mark. Mark raised the baseball bat and pushed it into Denny's abdomen, causing him to bend over. When Denny stood back up, Mark hit him in the head and then knocked him on the bed. Mark held the baseball bat a couple feet over Denny's head and told him not

---

[1] We omit Mark's last name in this opinion because it is immaterial and there is no need to permanently associate his name with this case. His full name remains in the record.

to move while Mark's father called 911. Mark continued to hold the baseball bat and keep Denny on the bed until law enforcement arrived. Mark later told a police officer that he thought Denny might have been trying to escape when he charged him, but Denny would have had to push him out of the way to do so.

Denny appeared at a preliminary hearing the following day. The State filed a first appearance evaluation for the hearing that stated Denny "is on DOC [Department of Corrections] supervision. He is held on an active Superior Court warrant on a DOSA [Drug offender sentencing alternative] violation." Clerk's Papers (CP) at 134. The State also filed a proposed bond request that stated that one of the reasons for the bond amount was "New Crime(s) while on DOC Custody." CP at 10.

The State explained at the hearing that it was "asking for a $10,000 bond given the Defendant's criminal and warrant history and its concern for the victims' safety in this matter and as well as the fact that he's on DOC supervision." Rep. of Proc. (RP) (Apr. 28, 2023) at 4. The court explained to Denny, "Sir, you're on a warrant—or not a no-bond hold on a DOSA revocation . . . We will set the bond at $10,000 for today given your DOSA hold." RP (Apr. 28, 2023) at 5-6. The court found there was probable cause, and the State filed charges against Denny for residential burglary.

The court granted multiple continuances, including one in October 2023, which stated the reason for the requested continuance was because Denny "will go to Shelton to serve remaining time on DOSA revoke." CP at 15. Due to Denny's failure to comply

with the terms of his bail, a warrant identification hearing took place in March 2024.  The

State filed another first appearance evaluation for the hearing, which noted, "[t]he

defendant was in prison 4/2023-10/2023 after a DOSA was revoked."  CP at 135.

Denny's two day jury trial began in April 2024.  The State called three witnesses

for their case-in-chief.  On cross-examination, all three witnesses admitted that Denny did

not have anything in his hands, nor did he have a backpack or any kind of bag, nor car

keys or a bicycle nearby.

After the State rested its case, defense counsel moved to dismiss, asserting that the

State failed to introduce any evidence that Denny entered the residence with the intent to

commit a crime.  Defense counsel asserted that the State only presented evidence that

Denny unlawfully entered the home, "[t]hat is. . . the crime of trespassing," not

residential burglary.  RP (Apr. 8, 2024) at 98.  The State argued that reasonable minds

could differ regarding Denny's intent.  The court ultimately rejected defense counsel's

motion, and the defense rested without presenting any evidence or calling witnesses.

Neither party requested that the jury be instructed on the crime of first degree trespass.

During closing, the State explained that it had the burden of proving beyond a

reasonable doubt that Denny entered the home with the intent to commit a crime, but did

not have to prove a specific crime.  However, the State went on to implicitly argue[2] that

---

[2] Respondent asserts that the State's evidence of intent was based on either assault or theft.

4

the evidence suggested that the crime Denny intended to commit may have been assault, based on the fact that he charged Mark when confronted, or possibly theft, based on the fact that he entered the house through a hidden access door and was going further inside the house when he was confronted by Mark.

Defense counsel's closing argument mirrored their argument for the motion to dismiss, focusing on the State's lack of evidence in regard to Denny's intent. Defense counsel stated:

> It has been prove[d] beyond a reasonable doubt that Mr. Denny entered or remained unlawfully in a building. . . . When you enter or remain in a building unlawfully with no intent to commit a crime, *it's called trespassing*, not residential burglary. Mr. Denny is on trial for residential burglary, not trespassing. This is an overcharge by the State.

RP (Apr. 9, 2024) at 127-28 (emphasis added).

Defense counsel asserted that Mark heard strange walking or shuffling because Denny was walking loud enough to be heard by another person and was not walking fast. She noted that Denny was not "quickly sneaking around the outside of the house like you would imagine a burglar doing." RP (Apr. 9, 2024) at 128. Counsel further noted that Mark stated he thought Denny's intention was to escape when Denny turned around and ran toward Mark. She argued that Denny's intent when he ran at Mark was to escape, not to commit a crime, but he was unable to do so because Mark was in front of the door.

Defense counsel also pointed to the evidence that Denny did not have anything in his hands, nor did he have a bag, backpack, or "burglar tools" and thus had nowhere to

put anything if his intent was to steal.  Counsel noted that there was no evidence that

Denny had a vehicle or bicycle and therefore had no way to get away if his intent was to

commit a crime.  She further stated:

> [T]he State might have prove[d] that Mr. Denny entered that house
> unlawfully.  The State has not prove[d] beyond a reasonable doubt that he
> entered or remained with intent to commit a crime against a person or
> property therein.

RP (Apr. 9, 2024) at 130.  Finally, defense counsel requested the jury ask themselves if

they had been presented evidence that results in no reasonable doubt about whether

Denny intended to commit a crime when he entered the home.  The jury found Denny

guilty.

At sentencing, the State asserted that Denny's offender score was "8".  The State's

sentencing brief calculated the score based on six points for Denny's adult criminal

history, one point for his juvenile violent felony disposition, and one point because he

committed the crime while on community custody.  The brief also detailed Denny's

scoreable criminal history, which listed his prior convictions for domestic violence

burglary in the second degree and domestic violence assault in the third degree and

indicated that these crimes were committed on the same date.

Additionally, an understanding of defendant's criminal history was filed and also

contained a list of Denny's criminal history.  The box indicating that any prior

convictions counted as one offense in calculating the offender score was not checked, nor

was the box that stated Denny committed the current offense while on community

custody. The document was signed by Denny, defense counsel, and the State. When

asked if the parties agreed that Denny's offender score is "8", defense counsel stated,

"Yes, Your Honor." RP (Apr. 17, 2024) at 149-50.

The court determined that Denny's offender score was "8" and sentenced him to

sixty months. However, the court made no findings with regard to Denny being on

community custody at the time he committed the crime, nor was the box indicating such

circumstances checked on the judgment and sentence.

Denny timely appeals.

ANALYSIS

INEFFECTIVE ASSISTANCE OF COUNSEL

Denny contends that his defense counsel was ineffective for failing to request a

lesser included offense jury instruction for first degree trespass. The State responds that

Denny was not entitled to the lesser included jury instruction because trespass is not a

lesser included offense of burglary and alternatively argues that it is reasonable to assume

that counsel made a strategic choice to pursue an all or nothing approach. Either way, the

State contends that Denny failed to demonstrate prejudice. We agree that Denny failed to

show that counsel's performance was deficient.

Criminal defendants have a constitutionally guaranteed right to effective assistance of counsel. U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "A claim of ineffective assistance of counsel [is an issue of constitutional magnitude and] may be considered for the first time on appeal." *State v. Nichols*, 161 Wn.2d 1, 9, 162 P.3d 1122 (2007). Claims of ineffective assistance of counsel are reviewed de novo. *State v. Lopez*, 190 Wn.2d 104, 117, 410 P.3d 1117 (2018).

The defendant bears the burden of showing "(1) 'that counsel's performance was deficient' and (2) 'that the deficient performance prejudiced the defense.'" *State v. Bertrand*, 3 Wn.3d 116, 122, 546 P.3d 1020 (2024) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)). Both prongs of the *Strickland* test require the defendant to overcome a "strong presumption that counsel [was] effective." *State v. Vazquez*, 198 Wn.2d 239, 247, 494 P.3d 424 (2021). "If either element of the test is not satisfied, the inquiry ends." *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009).

Deficient performance is performance that falls "below an objective standard of reasonableness based on consideration of all the circumstances." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

We begin our analysis with the "strong presumption that counsel's performance was reasonable." *Kyllo*, 166 Wn.2d at 862.

The defendant can rebut the presumption of reasonable performance "where there is no conceivable legitimate tactic explaining counsel's performance." *State v. Reichenbach*, 153 Wn.2d 126, 130, 101 P.3d 80 (2004). "When [defense] counsel's conduct can be characterized as legitimate trial strategy or tactics, performance is not deficient." *Kyllo*, 166 Wn.2d at 863. That the strategy was ultimately unsuccessful is immaterial to assessing counsel's reasonableness, "hindsight has no place in an ineffective assistance analysis." *State v. Grier*, 171 Wn.2d 17, 43, 246 P.3d 1260 (2011).

"[B]oth the defendant and the State have the right to present a lesser included offense to the jury." RCW 10.61.006; *State v. Witherspoon*, 180 Wn.2d 875, 886, 329 P.3d 888 (2014). Whether or not to request a jury instruction on a specific lesser included offense is a tactical decision. *Grier*, 171 Wn.2d at 39. "Where a lesser included offense instruction would weaken the defendant's claim of innocence, the failure to request a lesser included offense instruction is a reasonable strategy." *State v. Hassan*, 151 Wn. App. 209, 220, 211 P.3d 441 (2009).

Denny was charged with residential burglary. A person is guilty of residential burglary if they enter or remain unlawfully in a dwelling other than a vehicle, with the intent to commit a crime against a person or property therein. RCW 9A.52.025. The State is only required to prove that Denny intended to commit a crime when he entered the dwelling, not that he intended to commit a specific crime. *State v. Larkins*, 147 Wn. App. 858, 863, 199 P.3d 441 (2008).

9

Defense counsel's failure to seek a lesser-included instruction can be characterized as a legitimate trial tactic to pursue an all or nothing strategy. Denny asserted a general denial defense and developed this strategy throughout his motion to dismiss, cross-examination of the witnesses, and closing argument. This is a legitimate strategy and reasonable under the circumstances. Counsel attempted to develop credibility with the jury by conceding unlawful entry and then pointed to the lack of evidence of Denny's intent. Because we conclude that counsel's failure to request a lesser-included instruction on trespass was a reasonable trial strategy and counsel was not ineffective, we do not need to consider whether Denny can show prejudice. Nor do we need to decide whether Denny was entitled to such an instruction.

OFFENDER SCORE

Denny contends the court erred in calculating his offender score in several respects: (1) by adding one point for his prior juvenile adjudication of guilt, (2) adding one point for being on community custody at the time the crime was committed, and (3) for failing to make an independent determination as to whether two of Denny's prior convictions constituted the same criminal conduct. The State argues that Denny's offender score is correct but concedes that the trial court did not explicitly find, nor did Denny affirmatively agree, that Denny was on community custody at the time he committed the current offense. We decline the State's invitation for a limited remand and instead remand for de novo resentencing.

"[A] challenge to the offender score calculation is a sentencing error [and] may be raised for the first time on appeal." *State v. Roche*, 75 Wn. App. 500, 513, 878 P.2d 497 (1994); *State v. Ross*, 152 Wn.2d 220, 229, 95 P.3d 1225 (2004). A sentencing court's calculation of an offender score is reviewed de novo. *State v. Tili*, 148 Wn.2d 350, 358, 60 P.3d 1192 (2003). Remand for resentencing is required if the offender score has been miscalculated, unless it is clear from the record that the trial court would impose the same sentence. *State v. Parker*, 132 Wn.2d 182, 189, 937 P.2d 575 (1997).

A summary of the defendant's criminal history from the prosecutor "shall be prima facie evidence of the existence and validity of the convictions listed therein. If the court is satisfied by a preponderance of the evidence that the defendant has a criminal history, the court shall specify the convictions it has found to exist." RCW 9.94A.500(1). "If a defendant does not affirmatively acknowledge his criminal history and the State does not provide facts or information establishing that history, resentencing is required." *State v. Allen*, 150 Wn. App. 300, 315, 207 P.3d 483 (2009). In determining a sentence, "the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing." RCW 9.94A.530(2).

One point is added to an offender score if the sentencing court finds by a preponderance of evidence, that the defendant was under community custody when the current offense was committed. RCW 9.94A.525(19); *State v. Jackson*, 150 Wn. App.

11

877, 891, 209 P.3d 553 (2009). "Community custody" means the "portion of an offender's sentence of confinement in lieu of earned release time or imposed as part of a sentence . . . and served in the community subject to controls placed on the offender's movement and activities by the department" of corrections. RCW 9.94A.030(5). A sentence for both prison-based and residential drug offender sentencing alternatives must include a term of community custody. RCW 9.94A.662(2)(b), .664(1)(a).

Review of whether a defendant was on "community custody" consists of an examination of [the defendant's] criminal history and a determination by the sentencing court of whether [the] record demonstrates that the defendant . . . was . . . on community [custody] at the time [they] committed the current crime." *State v. Jones*, 159 Wn.2d 231, 245, 149 P.3d 636 (2006).

The State concedes that there are no admissions or findings that Denny was on community custody at the time he committed the current offense but requests a limited remand so that the court can enter this finding. This request assumes that the record is sufficient to support such a finding. We make no such determination but note that if the State wants to admit additional evidence on remand, this would open the door for a full resentencing. *See State v. Jackson*, 150 Wn. App. 877, 892, 209 P.3d 553 (2009). In light of these variables, the best solution is to vacate Denny's sentence and remand for de

No. 40427-7-III
*State v. Denny*

novo resentencing where each side can present additional evidence and renew any relevant issues pertaining to the sentence.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Staab, J.

WE CONCUR:

_____
Lawrence-Berrey, C.J.

_____
Murphy, J.